LOTTINGER, Judge.
This is a suit by Hubert Seals, d/b/a Jackson Cleaners, against the Feliciana Electric & Plumbing Company, Inc. and their liability insurer, Hartford Accident and Indemnity Company for damages allegedly caused by the employees of the Felici-ana Electric Company when they walked on the roof of a building belonging to the plaintiff in the installation of a television set and antenna. It is set out that the antenna was installed on April 1, 1955, and that it was later moved to another location with the result that some of the workmen walked on the plaintiff’s roof causing same to leak. After trial on the merits in the court below, judgment was rendered in favor of the plaintiff awarding to him the total sum of $1,445. The matter is now before us on an appeal taken by the defendants.
In their brief before this court, the defendants did not seriously contend that the leaks in the plaintiff’s roof were not caused by the actions of the employees who set up the television antenna. Indeed, the testimony is abundantly clear to the effect that the plaintiff’s roof did not leak before the antenna was set up, and that it did begin to leak almost immediately after the antenna was installed. The plaintiff testified that in 1954 during the month of December, he had one Otis Havard to go upon the roof and coat it with asbestolene, in order to preserve it. He further stated that until the time that the television set was installed he had had no trouble with the roof and that the first time it rained afterwards, the water poured into his place of business.
One Bennie Wilson, a carpenter, testified that he had examined the plaintiff's roof previous to the installation of the television antenna and that the application of the asbestoslene was proper and that a good job had been done. He stated that previous to the installation of the television set, he had heard of no complaints as to the roof leaking but that after -the set was installed that the roof did begin to leak.
Clement Palmer testified that he frequented the plaintiff’s cleaning establishment and that prior to April of 1955, he heard no complaints about the roof leaking but that subsequently it had leaked a lot.
The real question presented is that of quantum. The trial judge broke down his award as follows:
Damages to the roof $650.00
Cost of repairs to inside ceilings 350.00
Worry, inconvenience and frustration 250.00
Repairs already made by plaintiff 195.00
There were two witnesses who testified with respect to the costs of repairing the roof and the inside ceilings. The record shows that the building in question was used by the plaintiff both for living quarters and for his place of business. It had on it in one part a tin roof and in the other part an asphalt shingle roof. Mr. Wilson, the carpenter, stated that to get new metal for the tin roof would cost $200; that new asphalt shingles would cost $135; that his labor for tearing off the old roof and replacing it with new material, would be $155. He stated further that he had been paid approximately $40 to $45 by the plaintiff for work done in an attempt to repair the roof by the application of tin foil. The record does not show exactly the cost of the tin foil that was used in an attempt to repair the roof, but Wilson stated that there were 25 seams 28 feet long to cover and that with the overlap it took 30 feet of foil to cover each seam which should total 750 feet of foil. He stated that there were 200 feet of foil in a roll, and that he believed it cost $2.00 per roll. He testified that he used two buckets of plastic cement which cost from $1.35 to $2.35 per bucket.
The other witness who testified with respect to repairing the plaintiff’s roof and ceiling was a Mr. A. E. McGraw who stated *734 that he had been a building contractor for some 35 to 40 years and that for the last ten years he had been engaged mostly in the repair business. According to Mr. Mc-Graw, the labor and material for replacing the asphalt shingles over the living quarters would total $184; the labor and material for replacing the metal roof $343; to replace three pieces of sheet rock would be $26 and to paint the inside would be $92.80, or a total of $645.55 to repair the damages which he found.
From the above and foregoing, it will be seen that McGraw’s estimate for the roof would total $527 whereas that of Wilson would total $490. It is apparent, therefore, that the trial judge’s award for this item of damage is excessive and accordingly same will be reduced to the sum of $490.
The next item of damage allowed by the trial judge is the $350 for repair to the inside ceilings. We are unable to find in the record any proof which would show that it would cost that much to repair the ceilings and the only satisfactory testimony on this point would be that of Mr. McGraw, who stated that he would repair the sheet rock for $26 and paint the ceilings for the sum of $92.80. Accordingly, the sum of $118.80 will be allowed for the damages caused the ceilings.
While the trial judge allowed the sum of $195 for repairs already made by the plaintiff, we do not believe that the record contains any proof showing that the plaintiff expended that amount. As shown above, the plaintiff paid Mr. Wilson from $40 to $45 for his labor on the roof. Estimating the cost of the foil at $12.00 together with two buckets of cement at $2.35 a bucket would total the material at $16.70 which, added to the labor at $45 would amount to $61.70, which amount will be allowed for the money actually spent by the plaintiff.
The amount of $250 awarded the plaintiff for “Worry, inconvenience and frustration” would not appear to be unreasonable. The record shows without contradiction, that the roof leaked badly over a period of months and that the plaintiff, who was in the dry cleaning business, was caused considerable worry and work shifting around the clothes of his customers in order that they would not get wet, and in drying them out after some of them had gotten wet.
Counsel for defendants argue very strenuously that as the tin roof was installed in 1939 and the asphalt shingles in 1946, that the award for damages to the roof should be based on a depreciation basis. We do not know how depreciation can be taken into account and at the same time make full restitution for the plaintiff. It is evident from the record that previous to the walking on the roof by the defendant’s employees, the same did not leak or give the plaintiff any trouble whatsoever. Be that as it may however, the defendant has not shown to our satisfaction the amount of depreciation that should be applied. Consequently, we believe that he is entitled to the cost of a new roof without regard to depreciation of the old one.
For the reasons assigned, the judgment appealed from will be amended to award the plaintiff damages as follows;
Damages to roof $490.00
Damages to Ceilings 118.80
Repairs actually expended by plaintiff 61.70
Worry and inconvenience 250.00
Or a total of $920.50
Except as herein amended, the judgment appealed from is affirmed, and plaintiff to pay the cost of this appeal.
Judgment amended and as amended affirmed.