219 So.2d 538 (1969)
Mrs. George R. TODD et al., Plaintiffs and Appellees,
v.
AETNA CASUALTY & SURETY COMPANY et al., Defendants and Appellants.
No. 2570.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1969.
Rehearing Denied March 12, 1969.
Voorhies, Labbe, Fontenot, Leonard & McGlasson, by J. Winston Fontenot, Lafayette, for defendants-appellants.
J. Minos Simon, Lafayette, for plaintiff-appellee.
McBride & Brewster, by Norman Foret, Lafayette, for defendant-appellee.
Before CULPEPPER, HOOD and SAVOY, JJ.
CULPEPPER, Judge.
This is a wrongful death action. Plaintiffs are respectively the widow and daughter of George R. Todd, who died of a heart attack suffered while watching his automobile being removed from a ditch. The defendant, William D. Langwell, was the driver of the vehicle which struck the decedent's parked automobile and knocked it into the ditch. Also named as defendants are Langwell's employer, Cabot Corporation, and his insurer, Aetna Casualty & Surety Company. The district judge awarded the widow $25,000 and the daughter $5,000. Defendants appealed.
*539 The issue is whether Langwell's negligence, in striking the decedent's parked automobile, was the legal cause[1] of Mr. Todd's death.
There is little dispute as to the facts. On the night in question, Mr. Todd was a guest in the house in front of which he had parked his automobile on the street. The vehicle driven by the defendant Langwell struck the parked automobile and knocked it approximately 30 feet forward into a ditch paralleling the roadway. The occupants of the house heard the impact. Mr. Todd went out and got into his automobile, started the motor and attempted to remove it from the ditch by its own power, with the help of others pushing, but without success. He then got out of his automobile, went to the rear of the Cabot vehicle and wrote the name of Cabot Corporation on a pad. Due to the fact that it was raining, Todd was advised by his friends, who knew of his serious heart condition, to go back into the house and get a raincoat. He returned to the residence, obtained a raincoat and then walked back across the street to where several men were engaged in an effort to remove his vehicle with a chain attached to another automobile. Shortly thereafter, several people noticed that Mr. Todd had fallen to the ground and was gasping for breath. An ambulance was called and he was rushed to the hospital but was pronounced dead on arrival.
The expert medical testimony showed that plaintiff had suffered a severe heart attack in 1954, at which time his condition was diagnosed as coronary arteriosclerosis. He continued to have angina, which became progressively worse. These attacks of pain were related to excitement, overeating or overexertion. The experts expressed the opinion there is a reasonable and medical probability that Mr. Todd's death was caused by the excitement, mental anguish and physical exertion following his discovery that his automobile had been damaged and knocked into the ditch.
I. PRINCIPLES FOR DETERMINATION OF LEGAL CAUSE
Plaintiff argues that in Louisiana a wrongdoer takes his victim as he finds him.[2] Hence, in the present case defendant is liable where his victim was suffering from pre-existing heart disease and died as a result of mental anguish caused by damage to his property.
On the other hand, defendant relies on the general rule that "negligence is conduct which creates an unreasonable risk of foreseeable harm to others." Defendant contends that Mr. Todd's mental distress and resulting death were such unusual and unforeseeable consequences of this accident that defendant cannot be held liable.
In the landmark case of Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962) our Supreme Court established guidelines applicable here for a determination of legal cause. In that case defendant's truck was illegally stopped at night, on the main traveled portion of the highway, without flares or signals. A vehicle which had been leased by plaintiff to Gulf States Screw Products Company collided with defendant's parked truck. Plaintiff sued for the value of its rented vehicle. The principal defense was that any negligence on defendant's part was not the "proximate cause" and that the intervening negligence of the driver of the Dixie vehicle relieved defendant of liability. The court said:
"There is no universal formula for the determination of legal cause. In the instant case it bifurcates into two distinct inquiries: whether the negligence of the *540 obstructing driver was a cause-in-fact of the collision; and whether the defendants should be relieved of liability because of the intervening negligence of the driver of the Dixie truck."
In the Dixie case, the court had little difficulty finding that the negligence of the obstructing truck was a "cause-in-fact" of the collision. The essence of this inquiry was whether the collision would have occurred "but for" the conduct of the driver of the obstructing truck. It was clear that the accident would not have occurred without it.
In discussing the second inquiry, i. e., whether the defendant should be relieved of liability because of the intervening negligence of the driver of the Dixie vehicle, the court laid down certain principles which are particularly applicable in the present matter:
"The essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. It is a hazard problem. Specifically, it involves a determination of whether the statutory duty of displaying signal flags and responsibility for protecting traffic were designed, at least in part, to afford protection to the least of claimants of which plaintiff is a member from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway."[3]
*541 Applying the above quoted principles to the facts of the present matter, the first inquiry is whether defendant's negligence was a cause in fact of Mr. Todd's death. Clearly it was. But for the fact that the defendant struck Mr. Todd's automobile and knocked it in the ditch, Mr. Todd would not have suffered the mental anguish which, according to the expert medical testimony discussed above, was the immediate cause of his death.
The second inquiry established in the Dixie case presents a more serious problem. As appeal to the present matter, the inquiry is whether the duty not to run into parked automobiles on the street includes protection against such consequences as occurred here. The inquiry calls for more than a mechanical application of the rule that "the wrongdoer takes his victim as he finds him." This is not a rule of causation. It is a rule of the extent of recovery. It does not come into play until after liability has been established. In the present case, we do not reach the question of damages for wrongful death, until after we have decided whether defendant's action was the legal cause of the mental distress resulting in Mr. Todd's death.
As our Supreme Court wisely stated in the Dixie case, there is no universal formula for determining legal cause in every case. Ultimately, the decision in many cases will rest on legal policy.[4] With *542 this in mind, we will turn to a consideration of the jurisprudence concerning liability for mental anguish, without physical injury, caused by damages to ones property.
II. LOUISIANA JURISPRUDENCE, LIABILITY FOR MENTAL ANGUISH CAUSED BY DAMAGE TO ONES PROPERTY
Plaintiff contends the jurisprudence of Louisiana is now established that damages may be recovered for mental anguish, without any physical injury, caused by damage to ones property. Defendant argues, on the other hand, that all of the cases, relied on by plaintiff, involved willful and intentional acts, as distinguished from unintentional negligence. Hence, that the present case is distinguishable on this basis.
It is true that most of the cases cited by plaintiff involved deliberate and intentional acts.[5] However, there are at least 3 cases, all from our intermediate courts of appeal, which have awarded damages for mental anguish, without physical injury, caused by damage to ones property, where the basis of the cause of action was unintentional negligence.
In Holmes v. LeCour Corporation, 99 So. 2d 467 (Orl.La.App.1958) defendant's large truck left the highway and crashed into plaintiff's building, in which he operated a restaurant, bar and service station, causing it to burn. Plaintiff suffered no physical injury, but he was present during the crash and the burning of his building. In addition to the actual property loss, the court awarded $200 in damages for mental anguish and nervousness caused by the accident.
Lambert v. Allstate Insurance Company, 195 So.2d 698 (1st Cir. 1967) was a suit by the owners of a general store against a motorist whose automobile crashed into the store front. Plaintiffs were present and saw their property damaged. The court awarded $750 for "mental pain and anguish", citing the Holmes case, supra.
In Cooper v. Christensen, 212 So.2d 154, 157 (4th Cir. 1968) defendant's automobile crashed into plaintiff's residence. There was considerable property damage but plaintiff received no "physical impact". She testified she thought the noise was a bomb, was concerned for her safety and subsequently became very upset about the damage to her home and the time it took to repair it. The court awarded $1500 for mental *543 anguish "due to damage to ones property."[6]
Both counsel have also discussed Sahuc v. United States Fidelity & Guaranty Company, 320 F.2d 18 (5th Cir. 1963), in which plaintiff sought damages for mental anguish as a result of a fire destroying his home and furnishings. The court did not consider, and the decision does not disclose, whether the fire was caused by a deliberate act or unintentional negligence. Plaintiff was not present when the fire started and there was a dispute as to whether he saw the fire before it was extinguished. After reviewing the jurisprudence of Louisiana, the Federal Court concluded that in all Louisiana cases allowing damages for mental anguish, caused by damage to ones property, the plaintiff was actually present and saw his property damaged. Sahuc was not present during the fire. On this basis, recovery was denied.
From the above discussion of the jurisprudence, it is seen that at least 3 cases from our Courts of Appeal have allowed damages for mental anguish, without physical injury, caused by damage to ones property, where the cause of action was based on unintentional negligence, as distinguished from willful and deliberate acts. There was no application for writs of certiorari in any of these 3 cases and we do not find our Supreme Court has ever considered the question.
III. OUR CONCLUSIONS
We recognize the desirable simplicity and ease of administration of a rule that damages for mental distress caused by injury to ones property will be allowed only for intentional acts and not for unintentional negligence. However, we think the question of intent is but one of the factors which should be considered.[7]
In our view, a better rule is one similar to that established by our Supreme Court in the Dixie Drive-It-Yourself System v. American Beverage Company case, supra. Once causation in fact has been established, the question is whether defendant's *544 duty to the plaintiff includes protection against the consequences which actually occurred. This is a question of legal policy which recognizes that there must be some limitation of liability for unforeseeable consequences of the defendant's actions.[8]
Applying the principles discussed above to the facts of the present matter, the inquiry is whether the duty not to run into parked automobiles on the street includes protection against the hazard that the owner of the vehicle may be in a house nearby and may become so mentally distressed over the damages to his vehicle that illness or bodily harm may result. A mere statement of the question almost gives the answer. As a matter of legal policy we hold that defendant's duty did not include protection against such unforeseeable consequences as occurred here. Defendant's acts, of course, were not willful or intentional. Nor did he intend to cause mental distress to anyone. His acts were unintentional. They did not involve an unreasonable risk of causing mental distress to a person who was not even in the parked automobile.
A factor which has also influenced our policy decision in this case is the present state of our jurisprudence. Our courts have until now refused to allow even parents to recover damages for mental anguish caused by physical injuries to their children.[9] It would be highly illogical to allow damages for mental anguish caused by injury to ones automobile under the circumstances of this case and refuse to allow damages for mental suffering caused by injuries to ones child.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that plaintiffs' suit be dismissed at their costs. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] The term "legal cause" is used in preference to "proximate cause." See Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
[2] Rezza v. Cziffer, La.App., 186 So.2d 174 (4th Cir. 1966)
[3] Prosser on Torts, (3d. Ed. 1964) Section 49, pp. 282-283 expresses the same rationale as follows:

"Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for what he has caused. Unlike the fact of causation, with which it is often hopelessly confused, this is essentially a problem of law. It is sometimes said to be a question of whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences."
* * * * *
"It is quite possible, and often helpful, to state every question which arises in connection with `proximate cause' in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it does serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than go to the mechanical sequence of events which goes to make up causation in fact."
The very excellent Comment in 15 La. L.Rev. 391, pages 393-394, expresses it thus:
"In all negligence cases, plaintiff must establish that defendant was a wrongdoer, and that this wrongdoing was in fact a cause of his injury. Moreover, it is not sufficient that defendant's negligence was in fact a cause of plaintiff's injury; in addition, it must also be the `legal' or `proximate' cause.
"The issue of cause in fact can usually be answered by inquiring whether or not the accident would have occurred irrespective of defendant's wrongdoing. Thus the negligence of a train engineer in failing to blow the train whistle to warn an approaching motorist was not a cause in fact of plaintiff's injury when the latter's own automobile made so much noise that he could not have heard the whistle had defendant blown it. Similarly, the negligence of a defendant who parked a car on a street facing in an unauthorized direction was not the cause in fact of plaintiff's injury when the accident would have occurred even had the vehicle been properly parked. In each of these cases, there was clearly no cause in fact between defendant's negligence and plaintiff's injury. This is the proper scope of the cause in fact issue.
"In cases where the question of proximate cause is found, defendant's conduct usually will clearly be the cause in fact as determined above. The inquiry of proximate cause concerns itself with the possibility that despite the causal relationship the court may nevertheless feel that sound policy dictates a denial of recovery.
"It should be noted, however, that courts often use the terms cause in fact and proximate cause interchangeably. In addition, the issue of proximate cause is often interjected into the case when the only serious inquiry is whether defendant is guilty of negligence.
"The Problem
"The consequences that follow a negligent act may continue indefinitely in one form or another. It may be that good morals would require that he who commits a wrongful act should be answerable for all the losses which flow from that act, however remote. Any attempt to impose liability on such a basis, however, would result in almost infinite liability for wrongful acts, and in the words of one court `would set society on edge, and fill the courts with endless litigation.' As a matter of policy, therefore, liability cannot be imposed indiscriminately for all consequences that follow a wrongdoing. Thus, even in situations where it is conceded that defendant is a wrongdoer and that his wrongdoing was in fact a cause in bringing about the injury suffered by plaintiff, the court may nevertheless feel that sound policy dictates a denial of recovery."
[4] The author of the Comment, Proximate Cause in Louisiana, 16 La.LawRev. 391, pp. 410-411, uses Lynch v. Fisher, La. App., 41 So.2d 692 (2d Cir. 1949) to illustrate the application of policy considerations in determining "proximate cause". In the Lynch case, defendant's truck, negligently parked on the highway without lights, was struck by an automobile which caught fire and trapped the driver and his wife inside. Plaintiff, who lived nearby, went to the scene and rescued the driver and his wife. Plaintiff then retrieved a loaded pistol from the burning automobile and handed to the dazed driver who thereupon shot plaintiff in the leg. Plaintiff sought recovery for his gunshot wound against the driver of the obstructing truck. In allowing recovery the court stated rescuers are favored in the law, defendant had committed the highly dangerous act of obstructing the highway at night and the injury here was the direct result of a chain of circumstances starting with defendant's negligent acts.

Cappel v. Pierson, 15 La.App. 524, 132 So.2d 391 (2d Cir. 1931) is cited as illustrative of cases where policy factors resulted in judgment for the defendant. In that case, which was decided on an exception of no cause of action, the defendant superintendent of an insane asylum is alleged to have knowingly released a dangerous patient suffering from paranoia. The patient shot and killed plaintiff's husband. Denying recovery, the court held that the superintendent of the asylum acted in good faith and in the exercise of authority which must be delegated to such positions. It is apparent the court considered that sound public policy required that this type of risk be excluded from protection of the wrongful act alleged.
[5] McGee v. Yazoo and M.V.T. Company, 206 La. 121, 19 So.2d 21 (1944) was a suit by homeowners against the railroad to abate a nuisance and recover damages caused by smoke, soot and cinders from defendant's locomotive fueling station. In Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955), the ceilings, walls and floors of plaintiffs' residences were cracked by blasting operations during a geophysical survey being conducted by the defendant. Belgarde v. City of Natchitoches, La.App., 156 So.2d 132 (3d Cir. 1963) involved an intentional trespass by the city, which took part of plaintiff's land for a street. In Hayward v. Carraway, La.App., 180 So.2d 758 (1st Cir. 1965) defendant's minor children committed intentional acts of vandalism in plaintiff's antebellum plantation home. In Seals v. Hartford Accident & Indemnity Company, La.App., 88 So.2d 732 (1st Cir. 1956) defendant's employees, while installing a television antenna, walked on the roof of plaintiff's building and caused it to leak. In addition to the property damage, the court awarded $250 for "worry, inconvenience and frustration." In Trahan v. Florida Gas Transmission Company, La.App., 208 So.2d 550 (3rd Cir. 1968), the defendant, during contruction of a pipeline across plaintiff's property, dug a trench under a fence allowing plaintiff's cattle to escape. In Nickens v. McGehee, La.App., 184 So. 2d 271 (1st Cir. 1966), a dwelling burned due to defective wiring. The lessee sued the lessor for the value of clothing, furniture and furnishings. The basis of this cause of action was the duty of the lessor, under LSA-C.C. Article 2695, to guarantee against vices in the thing leased. There are many cases in which damages were awarded for mental anguish caused by willful trespass to property. See Loeblish v. Garnier, La.App., 113 So. 2d 95 (1st Cir. 1959) and the cases cited therein. See also Comment, Recovery for Mental Suffering in Louisiana, 15 La. L.Rev. 451, pp. 455-462.
[6] This award could probably have been justified under our jurisprudence allowing damages for fright or nervous shock, unaccompanied by physical injury, where the plaintiff was actually in great fear for his personal safety. Pecoraro v. Kopanica, 173 So. 203 (Orl.La.App.1937); Stewart v. Arkansas Southern Railway Company, 112 La. 764, 36 So. 676; Klein v. Medical Building Realty Company, Inc., 147 So. 122 (Orl.La.App. 1933); Laird v. Natchitoches Oil Mill, Inc., 10 La.App. 191, 120 So. 692 (2d Cir. 1929).
[7] This is the rationale of the American Law Institute, Restatement Of The Law of Torts, 2nd Ed., Secs. 312-313:

"Sec. 312. Emotional Distress Intended
"If the actor intentionally and unreasonably subjects another to emotional distress which he should recognize as likely to result in illness or other bodily harm, he is subject to liability to the other for an illness or other bodily harm of which the distress is a legal cause,
(a) although the actor has no intention of inflicting such harm, and
(b) irrespective of whether the act is directed against the other or a third person."
"Sec. 313. Emotional Distress Unintended
"(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
"(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other."
See also the Comment, Recovery For Mental Suffering in Louisiana, 15 La.L. Rev. 451, which takes the view that intent alone should not be determinative. Also, Prosser, Law Of Torts, 3rd Ed., Sec. 55, p. 346 discusses various factors used by the courts to determine liability for mental disturbance.
[8] A landmark case is Palsgraf v. Long Island Railroad Company, 248 N.Y. 339, 16 N.E. 99, 59 A.L.R. 1253 (1928) in which a passenger carrying a package was running to catch defendant's train. One of the railway employees, who was trying to assist the passenger, dislodged the package from his arms causing it to fall upon the rails. The package contained fireworks, which exploded, causing weighing scales some distance away to fall over upon the plaintiff. The court held defendant's duty to protect against reasonably foreseeable harm to other did not extend to the injured plaintiff.

A Louisiana case illustrative of the point is Davis v. H. B. Loeb Piano Company, 10 La.App. 106, 119 So. 746 (La.App. 1929) where plaintiff's daughter leaned back and fell through a window screen which had been left unsecured by defendant's employees after installing a radio antenna. The court held that "a screen is ordinarily used for the purpose of keeping out insects, and not as a means of support. There was no reason for the employe of defendant corporation to anticipate that the improper securing of the screen could cause injury to any one in the manner set forth in plaintiff's petition."
Of course, Dixie Drive-It-Yourself System v. American Beverage Company, supra, is itself a classic case limiting liability for defendant's acts to those consequences against which the defendant had a duty to protect.
[9] LaPlace v. Minks, 174 So.2d 895 (writ refused 248 La. 123, 176 So.2d 452); Vinet v. Checker Cab Company, 140 So. 2d 252; Sperier v. Ott, 116 La. 1087, 41 So. 323, 7 L.R.A.,N.S., 518; Sabatier v. Travelers Insurance Company, La.App., 184 So.2d 594.