Mr. Norbert H. **CLEMENS** and Mrs. Norbert H. Clemens, **Plaintiffs–Appellants,**

v.

**USV PHARMACEUTICAL, A DIVISION OF REVLON, INC.,** Defendant–Appellee.

No. 87–4259.

United States Court of Appeals, Fifth Circuit.

March 7, 1988.

---

Benjamin W. Mount, Scofield, Bergstedt, Gerard, Mount & Veron, Lake Charles, La., for plaintiffs-appellants.

David R. Frohn, David J. Doiron, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, Lake Charles, La., for defendant-appellee.

Before RUBIN, WILLIAMS, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Applying basic principles of Louisiana tort law, never before invoked in such a situation, we hold in this diversity case that a company that files with the Internal Revenue Service an erroneous report that a former employee has received a substantial amount of taxable income and that negligently fails to correct the report for an extended period of time after having received notice of the error, with the result that the former employee is subjected to an audit that the IRS would not otherwise have undertaken, is liable to the employee for consequential damages, but not resultant emotional distress. This is but the contemporary application of Louisiana's maxim: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." [1]

I.

Norbert Clemens worked for USV Pharmaceutical, a division of Revlon Corporation, until he retired in April 1980. While employed, Clemens contributed through payroll deductions to a retirement annuity insurance policy issued by Union Mutual Insurance Company. Under the policy, all Revlon annuitants would receive benefits for six months after they stopped working. Because Revlon paid part of the premiums for this coverage, the benefits received during these six months were taxable income to the annuitants. Employees might in addition elect to obtain and pay for additional coverage that would provide continuation of payments after the initial six-month period. The premiums for the additional coverage were paid solely by the employees, so the benefits received under this coverage were non-taxable. Revlon merely handled the payroll deductions for the extended coverage. Clemens began receiving annuity payments from Union Mutual after he retired. Having elected and paid for the extended coverage, he continued to receive payments after the first six-month period, but the amounts then received were no longer taxable income.

In 1981, Union Mutual realized that it would be unable to complete timely filing of W–2 forms with the Internal Revenue Service for all Revlon annuitants. Revlon thereupon agreed to file W–2's for its former employees who were receiving benefits from Union Mutual. Relying on information supplied by Union Mutual, Revlon filed a W–2 that erroneously indicated that Clemens had received $25,870.93 in taxable "sick pay benefits" during that year. In fact, Clemens had not worked for Revlon at all in 1981, and all the annuity benefits he received from Union Mutual that year were non-taxable.

1. La.Civ.Code Ann. art. 2315 (West Supp.1987).

Upon receiving the erroneous W–2 form, Clemens consulted an accountant and an IRS agent, both of whom confirmed his belief that the disability benefits were nontaxable. He communicated with Revlon, asked it to correct the error, and received assurances that Revlon would take care of the matter. On the strength of these assurances, Clemens did not report the benefits as income when he filed his income tax return.

In 1982, the IRS wrote to Clemens, inquiring about the discrepancy between the amount shown as taxable benefits on the erroneous W–2 form and the figures on his tax return. Clemens again contacted Revlon, and Revlon again assured him that the error would be corrected. In August 1984, however, Clemens received another IRS inquiry, and in November 1984, the IRS assessed him more than fifteen thousand dollars in taxes, penalties, and interest. Although several other minor errors in Clemens's return justified the assessment of $546, the erroneous W–2 form provided the reason for more than 95% of the total asserted deficiency.

Finally, in December 1984, Revlon wrote to the IRS correcting the erroneous information shown on Clemens's 1981 W–2 form. Ultimately, the IRS accepted the correction and reduced the tax deficiency to $546. In the meanwhile, however, in February 1985, Clemens commenced this action against Revlon, contending that Revlon had been negligent in filing the erroneous W–2 and in failing to correct its error for more than two years. Clemens sought to recover damages for out-of-pocket expenses incurred in resolving the problem, mental anguish, humiliation, embarrassment, inconvenience, and loss of reputation.

## II.

■ Revlon contends that federal tax law pre-empts Clemens's state tort action, asserting that 26 U.S.C. §§ 6674,[2] 7204,[3] and 7205[4] provide the only available remedies against employers who erroneously report their employees' income. Without venturing into a detailed exposition of tax law, we observe that these provisions are facially inapplicable to the facts of this case. All three of these sections apply to willful conduct, but Clemens has plead and proved at most negligence, not willfulness. Further, Revlon was not Clemens's employer during 1981, so § 6674 is irrelevant. Section 7205 concerns individuals required to supply information to their employers, a situation clearly distinguishable from the one before us. Even if artful construction could bring the facts of Clemens's case within the reach of these provisions, they proscribe the defined conduct as criminal and do not, therefore, pre-empt a state tort law remedy.

## III.

The district court held that Clemens had failed to establish the essential criteria to recover for a negligently inflicted injury. Under Louisiana law, to recover for negligent injury a plaintiff must prove that: (1) the defendant's action was a cause in fact

**2.** The arguably applicable portion of the text of this provision reads: "[A]ny person required under the provisions of section 6051 or 6053(b) to furnish a statement to an employee who willfully furnishes a false or fraudulent statement, or who willfully fails to furnish a statement in the manner, at the time, and showing the information required under section 6051 or 6053(b), or regulations prescribed thereunder, shall for each failure be subject to a penalty under this subchapter of $50...." 26 U.S.C. § 6674 (1982).

**3.** The arguably relevant portion of this provision reads: "[A]ny person required under the provisions of section 6051 to furnish a statement who willfully furnishes a false or fraudulent statement or who willfully fails to furnish a statement in the manner, at the time, and showing the information required under section 6051, or regulations prescribed thereunder, shall, for each offense, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both." 26 U.S.C. § 7204 (1982).

**4.** This provision reads: "Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax withheld under section 3402, shall, ... upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both." 26 U.S.C. § 7205 (1982).

of the plaintiff's harm;[5] (2) the defendant had a duty of care to prevent the specific injury suffered by the plaintiff;[6] (3) the defendant was negligent in failing, as a reasonably prudent person under the circumstances, to foresee some harm to the plaintiff of the same general character as the harm incurred and in failing to exercise due care to avoid it; and (4) the plaintiff suffered actual damages.[7] The district court held that Clemens's claim failed on the first, second, and third elements, and that whether he had sustained damage was therefore moot. We examine each of these findings separately.

A plaintiff may satisfy the causation-in-fact requirement of Louisiana negligence law by showing that the defendant's action was a "substantial factor" contributing to the plaintiff's harm.[8] The district court held that the filing of the erroneous W-2 was not a substantial cause of Clemens's harm because the injuries Clemens suffered resulted primarily from the actions of the IRS and that agency would have pursued Clemens for the $546 in unrelated back taxes even if Revlon had never filed the erroneous W-2.

■ This analysis suffers from two flaws. First, it is an oversimplification if not a distortion. An IRS assessment of $546 in back taxes that the taxpayer promptly acknowledges as due has an impact quite different from the assessment of more than $15,000 in back taxes and penalties for which the taxpayer is not, in fact, liable. Second, it is doubtful that the IRS would even have singled out Clemens's return for review if the major discrepancy between his tax return and the W-2 had not drawn its attention to him. Because the erroneous W-2 served as a red flag to draw attention to Clemens's tax return and

because most of the time, energy, and money Clemens spent was devoted to expunging the $15,000 assessment, the filing of the erroneous form and the later failure to correct it promptly were together substantial factors contributing to Clemens's injury.

Revlon asserts that gratuitously made false statements do not result in liability unless the statements are intentionally, not merely negligently, false,[9] and that, therefore, because Revlon had no duty to prepare and submit the W-2 form, it cannot be liable for negligence in doing so. The doctrine relied on is correctly stated, but it is inapplicable. The rule protecting volunteer actors who are merely negligent applies in actions brought by those who rely on or are influenced by false statements when the maker of the statements knew that those to whom he spoke intended to rely on the statements or when the maker of the statements sought to influence those to whom he spoke.[10] The posture of the parties to this case is different. It was IRS, not Clemens, who relied on the misstatements, yet Clemens, not the IRS, brought the action to recover from the maker of the statements.

■ Additionally, as to Clemens, the statements were not gratuitous. True, as Clemens's former employer, Revlon had no duty to report annuity benefits paid by Union Mutual under a policy purchased by Clemens. But the parties have briefed and argued this case on the premise that Union Mutual had a duty to prepare and submit W-2 forms, and we accept this premise for the purpose of decision. Revlon undertook to prepare and submit the forms for the benefit of Union Mutual, not for the purpose of assisting individual employees like Clemens. Revlon effectively stepped into

5. *Dixie Drive It Yourself Sys. New Orleans Co. v. American Beverage Co.*, 242 La. 471, 137 So.2d 298, 302 (1962).

6. *Hill v. Lundin & Assocs.*, 260 La. 542, 256 So.2d 620, 622 (1972).

7. *Nelson v. Parish of Washington*, 805 F.2d 1236, 1239 (5th Cir.1986); *Andrus v. Trailers Unltd.*, 647 F.2d 556, 558–59 (5th Cir. Unit A June 1981).

8. *Nelson*, 805 F.2d at 1239; *Dixie Drive It Yourself*, 242 La. 471, 137 So.2d at 302.

9. W. Prosser, Handbook of the Law of Torts § 107, at 706 (4th ed. 1971).

10. *Id.* at 706–09.

the shoes of Union Mutual, even if it did so as a volunteer vis-a-vis Union Mutual, and thereby it assumed the duty Union Mutual owed to Clemens. In this respect, it was in the same situation as a doctor who, as an accommodation to another doctor, agrees to treat his friend's patients. In determining whether Revlon acted negligently, we assess its conduct not on the basis that it was Clemens's former employer, but on the basis that it assumed the duty Union Mutual owed to its annuitants. Those statutorily required to file W–2 forms owe those for whose benefit the duty is imposed the same degree of care, whether the relationship is between payors and recipients of annuity benefits or payors and recipients of wages.

Under Louisiana law, the inquiry into the scope of duty depends on a judicial determination of how far the zone or radius of a legal duty should extend.[11] Defendants' liability must depend upon a principle of law that encompasses both the defendant's conduct and the protection of the victim against the risk of injury created by that conduct.[12]

The district court held that although employers have a duty to file correct W–2 forms, the duty does not extend to the protection of employees against the risk of injury created by the simple breach of that duty. That may indeed be the case if the employer does no more than make a clerical error, as a bank might in sending an erroneous statement or a department store might in mailing an incorrect bill. In such instances, the error should cause little concern and can be readily corrected. When an employer or payor of annuity benefits files a W–2 form, the employee or annuitant receives a copy. The employee—who must, after all, enter information about wages and benefits on his own form 1040—can easily verify the accuracy of the information and act promptly to have any mistakes corrected. So the mere filing of an erroneous W–2 should occasion only a slight annoyance, causing the employee

concerned no more than trivial inconvenience.

 It is unnecessary for us to decide whether those who are exposed to no more than minor inconvenience when misinformation about them is submitted to the IRS, and whose damages consist solely of minimal expenses for phone calls or postage, trivial outlays of time and energy in contacting people who can resolve the problem, and the garden-variety aggravation of being on the receiving end of a bureaucratic blunder, have a right to recover for negligent filing of an erroneous W–2 form. We do not hold that those statutorily required to file such forms are insurers against every trivial inconvenience that an error in filing may occasion.[13] The duty of those who file information returns does not end, however, when a form is filed, correct or incorrect. It extends to correction of any errors made, at least when the employee detects the error and calls on the form filer to correct the erroneous report.

Clemens's claim is not based solely on Revlon's negligent filing of the W–2. Throughout this litigation he has asserted that Revlon's continued and protracted failure to correct the erroneous filing was actionable negligence. In the spring of 1982, Clemens contacted Dennis Daugherty, a Personnel Administrator for Revlon, about the erroneous W–2 form. This occurred shortly after Clemens had received his copy of the W–2 form and before the IRS had even questioned him about his return. Once Clemens had pointed out the error, however, Revlon neglected to send the IRS a corrected W–2 until December 31, 1984, more than two and a half years after Clemens had called the matter to its attention and long after the IRS had acted on the basis of Revlon's error. Clemens tried to deal directly with the IRS, but the IRS refused to change its records unless it received verification of his representations.

---

**11.** *Hill,* 260 La. 542, 256 So.2d 620, 622–23; *Dixie Drive It Yourself,* 242 La. 471, 137 So.2d at 304; *see also Andrus,* 647 F.2d at 559.

**12.** *Nelson,* 805 F.2d at 1239; *see also Hill,* 260 La. 542, 256 So.2d at 623; *Dixie Drive It Yourself,* 242 La. 471, 137 So.2d at 304.

**13.** *See Hill,* 260 La. 542, 256 So.2d at 622.

Revlon's failure to correct its initial error is therefore the crux of the present claim. Whether that failure to correct was negligent depends on two factors: (1) whether Revlon, exercising ordinary prudence under all the circumstances, should reasonably have foreseen some injury to Clemens of the same general character as the injury incurred, and (2) whether Revlon failed to exercise reasonable care to avoid that injury.[14]

■ Under this two-pronged test, Revlon was negligent. Clemens's injury was not only reasonably foreseeable, it was exactly the kind of injury most likely to result from Revlon's conduct. Revlon waited more than two and a half years before taking the simple step of sending a correction to the IRS; this inaction does not constitute an exercise of reasonable care.

■ We hold, therefore, that persons who undertake the duty of filing information returns concerning their employees and ex-employees have a duty to act with reasonable promptness to correct erroneous information they have sent to the IRS when such errors come to their attention in order to prevent precisely the kind of injury Clemens suffered in this case: being subjected to an IRS audit and wrongfully assessed back taxes, penalties, and interest, then having to undergo the inconvenience and expense involved in straightening things out after the passage of time and intervening events have compounded the initial error. This duty must rest upon the person who files the return, because the person who is shown to have received income is powerless to correct the mistake by himself.

### IV.

The district court did not reach the issue of damages, because it held that Clemens had failed to establish the other elements necessary to his claim. Clemens seeks to recover for humiliation, embarrassment, inconvenience, loss of reputation, and mental anguish, and out-of-pocket expenditures for medical care allegedly necessitated by in-creased stress and phone calls made between October 1984 and February 1986 in an effort to solve his problem.

■ The record does not support Clemens's claim for humiliation, embarrassment, or loss of reputation. Only a small group of people knew that Clemens was the subject of an IRS audit: Clemens himself and those he told, his immediate family, employees of Revlon and the IRS, a few professionals in related fields like accounting and tax advising, and perhaps the doctors he consulted for medical treatment. The tax assessment was not a matter of public knowledge that would cause him loss of good repute among his friends and associates. Clemens has shown no damage caused by the fact that a few IRS employees and accountants knew he was being audited. Moreover, all the IRS employees and related professionals with whom Clemens spoke promptly acknowledged that the $15,000 assessment was wrong if the facts were as he represented them.

Clemens contends that he suffered great mental anguish because the IRS, an agency empowered to foreclose on his home, assessed him for more than $15,000 in back taxes and penalties. He consulted several physicians for stress-related problems arguably related to or exacerbated by his experience with the IRS. Ordinarily, the district court as the trier of fact would have to weigh the credibility of the witnesses and decide 1) whether Clemens experienced compensable mental anguish even after he had been assured that, if Revlon sent a corrected W-2, he would not have to pay the back taxes, and 2) whether Clemens's medical problems were caused by the stress associated with the IRS audit. These inquiries are unnecessary in this case, however, because Louisiana law does not allow recovery for mental anguish in cases of this nature.

Louisiana courts have been circumspect in allowing recovery for mental anguish. In negligence cases involving damage to property, Louisiana courts have allowed recovery for mental anguish when the tort

---

14. *Nelson*, 805 F.2d at 1239.

involved a sudden, unexpected accident and the person seeking to recover was at or very near the scene of the accident when it occurred. In *Chappetta v. Bowman Transportation, Inc.*,[15] the driver of a car was allowed to recover for mental anguish from the employer of the driver of a tractor-trailer truck. The driver of the car had stopped at an intersection; the truck turned abruptly, and its left rear wheels came over the car's hood and on top of the roof directly over where the driver was sitting. In *Carroll v. State Farm Insurance Co.*,[16] a woman was allowed to recover for mental anguish from the driver of a motorboat. The woman was sitting on a pier at her lakefront home when the motorboat, approaching the pier at a high rate of speed, struck a barge, became airborne, and travelled directly over the woman's head, forcing the woman to throw herself sidewards so that the boat's propeller would not slash into her head.

■ The tort that caused Clemens's suffering was of a completely different nature. It did not involve a sudden, dramatic incident that produced immediate, intense psychic trauma. Clemens's suffering, though perhaps protracted, was not of this sharp intensity. It was more closely akin to the "worry or mental upset" for which damages are not recoverable under Louisiana law.[17]

■ Louisiana's duty-risk analysis points to the same conclusion: the duty to file correct W–2's does not include protection against the risk that someone about whom erroneous information is submitted will become so agitated as to suffer high blood pressure and chest pain despite assurances that the resulting assessment against him is erroneous and will be corrected.[18] Because Clemens cannot recover for mental anguish, of course, he cannot recover out-of-pocket expenses for treatment of any physical manifestations of that mental anguish.

■ We hold, however, that Louisiana law allows recovery for reasonable out-of-pocket expenditures incurred in trying to straighten out the problem with the IRS and for the value of time reasonably devoted to that end. The out-of-pocket expenses recoverable include such costs as postage, phone calls, and travel expenses if reasonably incurred in resolving matters. Although Clemens was retired and thus did not have to take time off work to attend to the problem, his time nevertheless has value to him. After he took the first uncompensable step of calling the error to Revlon's attention, he should have been free to spend his time as he desired rather than having to devote it to fixing a mess not of his making. We note that Clemens has stated that he did not incur any attorney's or accountant's fees, so we do not include such items although they would be recoverable had they been sought and proved.

For these reasons, we REVERSE and REMAND to the district court for an award of damages consistent with this opinion.

---

15. 415 So.2d 1019 (La.Ct.App.1982).

16. 427 So.2d 24 (La.Ct.App.1983).

17. *Meyers v. Basso,* 381 So.2d 843, 845 (La.Ct.App.), *writ denied,* 384 So.2d 794 (La.1980); *Farr v. Johnson,* 308 So.2d 884, 885 (La.Ct.App. 1975).

18. *See Todd v. Aetna Casualty & Sur. Co.,* 219 So.2d 538, 544 (La.Ct.App.1969).