260 So.2d 52 (1972)
Clarence NEWMAN et ux.
v.
The CITY OF BATON ROUGE.
No. 8760.
Court of Appeal of Louisiana, First Circuit.
March 13, 1972.
Rehearing Denied April 17, 1972.
Writ Refused May 25, 1972.
Joseph F. Keogh and Charles E. Pilcher, City Parish Attys., Baton Rouge, for appellants.
*53 Ralph Brewer, Baton Rouge, for appellee.
BLANCHE, Judge.
Plaintiff, Oceal Newman, on September 21, 1966, slipped and fell head first down the stairs of the main lobby of the Municipal Building of the City of Baton Rouge. The City of Baton Rouge as the governing authority of the City is the owner of the building. Plaintiff, Oceal Newman, and her husband, Clarence Newman, brought suit for their personal injuries and medical expenses. The trial court awarded judgment in favor of plaintiff, Oceal Newman, in the sum of $8,000 and judgment in favor of plaintiff, Clarence Newman, in the sum of $2,619.26. From this judgment the City has appealed.
Oceal Newman was attempting to descend from the second floor to the first floor lobby of the Municipal Building by means of the stairway connecting the two floors. Just before reaching the lobby, she slipped on the stairs and injured herself. The defendant was charged with negligence in that one of its employees carelessly spilled water on the steps while watering a planter box which was located adjacent to the stairs and in the main lobby. The principal defense to the suit by the City is that the water was not placed there by any of its employees, as there were no flowers to be watered in the planter box.
The City offered no testimony to rebut the overwhelming testimony by plaintiff, Oceal Newman, and her witnesses that there was water on the steps. Rosie Beauchamp, Lucille Abbott and Wilma Aites, sisters, were witnesses to the accident and helped assist Mrs. Newman after she had fallen. Two of these witnesses observed water on the stairs and all three observed that Mrs. Newman's clothing was wet. A few minutes after the accident, Mr. Roy Maughan, who first appeared in the case as attorney for plaintiffs but later withdrew for the reason he might be a witness in the case, testified that he had sent Mrs. Newman over to the City Court to search for someone who was due to appear in the District Court and that he had visited the scene after the accident and felt the water on the stairs and saw the water on the stairs. Mrs. Newman testified that as she was going to the second floor of the Municipal Building by means of the elevator and while awaiting the elevator she observed a young man watering the flowers in the planter box. Mr. Roy Maughan also verified that he looked in the planter box and observed that someone had watered the flowers, as he could see the water in the box as well as on the plants.
To rebut this testimony, the City relies on the testimony of Mr. Walter Penny, maintenance superintendent for defendant, who testified generally as to the history of the efforts to grow plants in the planter box after he took on the duties of maintenance superintendent in 1966. He testified that efforts to grow plants in the planter box had consistently met failure and that early in the summer of 1966 all plants were removed from the planter box, the water faucet was capped and the box remained empty of plants until the fall of 1967. His recollection of whether plants were growing in the planter box at the time of the accident was evidently rejected in favor of the positive testimony of Mrs. Newman and her witnesses that there was water in the planter box and that the stairs were wet.
We find no error in the finding by the trial court that the defendant's negligence caused the plaintiff's slip and fall, since the evidence supports a finding that the City's employee created a hazardous and dangerous condition by leaving water standing on the terrazzo stairs. Therefore, the case is decided against defendant on the basis of LSA-C.C. art. 2316 which provides that every person is responsible for the damages he occasions, not merely by his act, but by his negligence, his imprudence or his want of skill. Here the City did not exercise the degree of care which would be exercised by an ordinarily careful and prudent man under the same or similar circumstances. See Benton v. Connecticut *54 Fire Insurance Company, 145 So.2d 89 (La.App. 4th Cir. 1962). The degree of care owed by the City is no different than that imposed upon a storekeeper as to his customers or invitees. Legion are the cases in our jurisprudence which require that the proprietor only keep the floors and passageways of his premises in a reasonably safe condition and that he must exercise the degree of care which would be exercised by an ordinarily careful and prudent man under the same or similar circumstances.
Defendant assigns as error a finding by the trial judge that there was a causal relationship between the accident and the laminotomy performed by Dr. Kenneth C. Cranor to remove the protruding nucleus pulposus.
As a result of the fall, Oceal Newman sustained injuries to her right forearm, ankle and body. Medical evidence is conclusive that she initially sustained a cervical strain and a moderately severe lumbar strain. From the date of the accident on September 21, 1966, until the time she underwent a laminotomy on June 12, 1969, Mrs. Newman suffered almost continually from the effects of her injuries. She first went to Dr. R. M. Coco, who treated her for approximately a month. Thereafter, she was referred to an orthopedist, Dr. William E. Smith, who confirmed the initial treating physician's diagnosis that she had suffered a lumbosacral sprain. However, the pain and difficulties with her back continued and in October of 1967 she was referred to Dr. Kenneth C. Cranor. Despite negative results of two examinations to determine whether there was any disc involvement, the plaintiff continued her complaints. Finally, on June 12, 1969, a laminotomy was performed and the disc protrusion located at the level of L-4 and L-5 was removed.
In relating the causal connection between the accident and the laminotomy and in answer to the judge's question of whether plaintiff's condition resulted from the accident or from a developmental defect, Dr. Cranor stated it was his belief that the developmental defect played very little part in her problem. It was his opinion that considering her history, that is, continued pain and suffering with her back from the time of her fall, Mrs. Newman through a process of attrition subsequently developed a ruptured intervertebral disc which she would not have had without the fall. In other words, it was his belief that her fall down the steps triggered the entire episode which eventually led to the disc operation. Accordingly, the evidence supports the finding of the trial judge that the accident caused plaintiff's subsequent operation for a herniated disc.
Defendant further assigns as error the award in favor of plaintiff, Clarence Newman. The evidence shows that drugs, hospital and doctors' expenses totaled $2,369.26. The judgment in Clarence Newman's favor was in the sum of $2,619.26, or $250 more than the proven specials. While the trial judge gave no reasons for judgment, both counsel for plaintiff and defendant maintain that the $250 difference was for the husband's anxiety, mental anguish and fear regarding the possibility of the loss of his unborn child from the injury to his wife. Not only was there no evidence to support a finding that plaintiff, Clarence Newman, sustained such an injury even though his wife was found to be pregnant at the time of the accident, but this Court has not approved the principle that damages may be awarded for mental pain and suffering occasioned by injury or threat of injury to another. Recently in Dudley v. State Farm Mutual Automobile Insurance Company, 255 So.2d 462 (La.App.1st Cir. 1971), this Court denied damages to the father for mental pain and anguish occasioned by witnessing a serious accident resulting in injuries to his son. Plaintiff relies on Valence v. Louisiana Power and Light Company, 50 So.2d 847 (La.App. Orleans 1951), which allowed recovery to a father for mental anguish and worry over fear his wife's unborn child had sustained an injury which might result in an abortion. *55 Counsel's attention is called to a later decision of the Fourth Circuit, i. e., Robertson v. Aetna Casualty and Surety Company, 232 So.2d 829 (La.App. 4th Cir. 1970), which declined to follow its previous ruling in the Valence case, choosing:
"... to remain consistent with the accepted jurisprudence of this state, we adopt the uniform rule that one person cannot recover damages for mental anguish as a result of injuries to another where there is no breach of an independent ex contractu or ex delicto duty owed directly to the claimant as in Holland v. St. Paul Mercury Insurance Co., La.App., 135 So.2d 145 (1st Cir. 1961)." (Robertson v. Aetna Casualty and Surety Company, 232 So.2d 829, 831)
Therefore, the judgment in favor of plaintiff, Clarence Newman, is reduced to the sum of $2,369.26. In all other respects the judgment is affirmed. Defendant-appellant is to pay all costs of this appeal.
Affirmed in part, amended in part and rendered.