285 So.2d 863 (1973)
Mrs. Ida Brown CAMBRICE, Individually and as Tutrix of Dennis Cambrice
v.
FERN SUPPLY CO., INC., et al.
No. 5620.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1973.
*864 Anita L. Connick, J. P. Connick, Jr., Connick & Connick, New Orleans, for plaintiffs-appellees.
J. Walter Ward, Jr. (Christovich & Kearney, New Orleans, for defendants-appellants.
Before REDMANN, J., and HUFFT and WICKER, JJ. Pro Tem.
REDMANN, Judge.
A truck driver, his employer and their insurer appeal from a judgment on a jury verdict which cast them for damages to a two-year-old boy and his mother resulting from the truck's running over the boy's leg.
Issues include liability and quantum. Defendants also complain of prejudicial evidence of other traffic offenses by the driver and of refusal of two requested special charges to the jury.

Jury Problems
Defendants by pre-trial motion and objection during trial sought to keep from the jury evidence of the driver's prior traffic court convictions. Nevertheless, the judge allowed, in the jury's presence, in limine return of subpoena duces tecum to the traffic court clerk and then testimony detailing all such convictions since 1963, including many for exceeding speed limits (and some for harmless irrelevancies such as no taillight).[1]
A material issue in this trial was whether defendant driver was driving at an unreasonable speed.[2]
Evidence of prior traffic convictions is inadmissible; Buras v. Peck, 83 So.2d 783 (La.App.1955). Moreover, its admission is prejudicial. Wigmore observes, speaking in a criminal context, "It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunalwhether judge or juryis to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * *" Wigmore on Evidence, § 194. This exclusory principle has a "corresponding application" in civil negligence cases, § 199. (Compare §§ 65 and 97.) We conclude that defendants were prejudiced by the improper admission of evidence of prior speeding which might unduly prejudice the jury on the question whether his speed was excessive at the time of the accident sued on.
Because Louisiana courts of appeal review facts, Const. art. 7 § 29, the admission of unduly prejudicial evidence before a jury need not result in a remand; see DeSalvo v. Rizza, 272 So.2d 27 (La.App. 1973), writ refused La., 275 So.2d 781; but see Herbert v. Travelers Indem. Co., 193 So.2d 330 (La.App.1966), writ refused 250 La. 365, 195 So.2d 643, which, in order to *865 allow jury consideration of evidence improperly excluded (though in the appellate record by proffer, C.C.P. art. 1636), remanded so that the later verdict-winner might have the benefit of the so-called "manifest error" requirement for reversal of a jury's fact-finding.
However, where evidence has been improperly admitted which might have unduly prejudiced the jury, the "manifest error" rule ought not to be applied, since it presupposes a competent and unbiased fact-finder. Unduly prejudicial evidence may convert an unbiased jury to a biased one. As in Richardson v. Tate, 269 So.2d 278 (La.App.1972), writ refused 264 La. 257, 271 So.2d 260, 261 (where a jury charge was defective), we conclude we are obliged to make an independent finding, without regard to the jury's, on the question of liability.
We therefore need not review the questioned rulings on jury charges, which also related to liability.

Facts
Defendants' truck was proceeding along a driveway between two three-story apartment buildings in a public housing complex. On each side of the driveway were parking bays and there were some automobiles parked, perpendicular to the driveway. Plaintiff's sons Dennis, then two years old, and George, then three, were playing near one of these parked automobiles, on defendant driver's left. The parked car, we find, obstructed defendant driver's view and prevented his seeing the children. There were no other children in the area at the time.
The older infant ran from behind the parked car and defendant driver braked somewhat and swerved to his own left. He avoided the older child. But as the truck passsed the parked car, the two-year-old came out and the left rear wheel of the truck ran over the child's leg.
The fact we find convicts the driver of causative negligence is that the three-year-old had time to cross in front of the truck. During all of that time the driver saw him (or should have seen him), and should have recognized the possibility of other children playing with him and therefore should have slowed markedly, rather than driving around the three-year-old at a speed which had to be about 25 mph.[3]
In our judgment, once the three-year-old's presence was evident, the driver could and should have reduced his speed on this driveway, knowing the presence of a child or children, in the ample time available, to perhaps 5 mph. At that speed, without having swerved to the left of the 17' driveway's central portion, he should have been able to see the two-year-old coming from the left[4] and should have avoided injuring him, by stopping or swerving to the right. The driver's negligent maintaining of his speed when circumstances he knew or should have known dictated very high care thus caused the two-year-old child's injuries, for which defendants are liable.

Quantum
The child's injuries were a fracture of the femur, a compound fracture of the tibia, and extensive damage to the soft tissue of the left leg, exposing muscle and tendons in two areas. Because of a head injury, pain medication was initially withheld. *866 Four operations, including repeated skin grafting, were performed on the leg. After a period of traction applied through pins through the bone, the boy was kept in a spica cast for several months. Hospitalization lasted 64 days. Residuals include a half-inch lengthening of the leg, scar tissue, knock-knees and a thigh bowed from angulation in the bone's rejoining.
The jury's $16,500 award for general damages is neither excessive nor inadequate. If we thought it arguable that the improperly admitted evidence of prior traffic offenses had caused an overvaluation of damages we would ourselves evaluate without considering the jury's figure. Here overvaluation from such cause is not arguable. Thus we treat the jury's finding on quantum as unaffected by the erroneous evidence admission. The amount is clearly within the jury's discretion.
The jury also awarded to plaintiff mother individually $8,666, although her prayer was only for $8,512.85, of which $5,000 was claimed for plaintiff mother's mental anguish and distress from the physical injury to her son.
No one may recover damages for his mental suffering resulting from injury to the person of another;[5] Sperier v. Ott, 116 La. 1087, 41 So. 323, 114 Am.St.Rep. 587, 7 L.R.A.(N.S.) 518 (1906); Newman v. City of Baton Rouge, 260 So.2d 52 (La. App.1972), writ refused 261 La. 1064, 262 So.2d 43.
Plaintiff cites Nickens v. McGehee, 184 So.2d 271 (La.App.1966), writ refused 249 La. 199, 186 So.2d 159, awarding damages for mental anguish to lessees for loss of their furnishings when their leased house burned (apparently during their absence). The supreme court has itself held compensable mental suffering from property damage, where one plaintiff was present at and another absent from their respective homes damaged by nearby underground explosions; Fontenot v. Magnolia Petr. Co., 227 La. 866, 80 So.2d 845 (1955).
Thus apparently the Louisiana law is that mental suffering from injury to one's property is compensable, and mental suffering from injury to one's child is not. Here, for example, the mother's grief over the bloodied and torn clothing of her son might be compensable, but her grief over his bloodied and torn leg is not. However, while this appears incongruous, the latest supreme court expression we find is its refusal of writs in Newman, supra, and we therefore refuse compensation for mental suffering for injury to one's child.
The evidence of plaintiff mother's other damages will only support an award of $2,572.85 plus future medical expenses, "estimated" in the petition at $1,000. There is reasonable proof of the necessity for plastic surgery two years or more from trial, when the child will be better able to cooperate by patience, immobility, etc. The minimal cost is estimated by the surgeon at $1,650. (There was discussion of the possibility of other procedures, e. g., if the present half-inch differential in leg lengths increases; but it was not testified such increase is probable. Thus we cannot consider it proven, as more probable than not, that this other operation will be necessary.)
We conclude plaintiff's recovery for future medical expenses is not limited by her petition's "estimate" of $1,000; see Budget Plan of B. R. Inc. v. Talbert, 276 So.2d 297 (La.1973), discussing C.C.P. arts. 862, 865, 2164 and 5051 as requiring liberal construction of pleadings to afford relief to an entitled party. We will allow the proven *867 $1,650 (plus an already accrued $70 doctor bill) as future medical expense and make the total award to the mother individually $4,292.85.
The judgment is amended to reduce the award to the mother individually to $4,292.85 and is otherwise affirmed.
NOTES
[1] Defendants had similarly objected to subpoenaing the driver's municipal court record.
[2] The jury returned for further instructions, asking whether a finding of speeding was by itself sufficient to fix liability.
[3] An expert estimated 25 mph from skid marks from one of the dual rear wheels. He testified that wheels brake best just before locking. A police officer testified that, though only the one dual rear wheel locked into a skid (as the driver stopped after realizing the child was hit), the brakes were in good working order by his tests. From this evidence we conclude speed was about 25 mph despite the driver's contrary testimony of 15 or 20 mph and evidence of other witnesses' evaluation of his speed as "not very fast".
[4] The fact that skid marks started five feet before the point of the child's entry into the driveway argues that, despite his non-recollection of it, the driver must have seen the second child before the truck ran over him.
[5] In wrongful death actions, C.C. art. 2315, mental suffering of the surviving relative is compensable, Underwood v. Gulf Rfg. Co., 128 La. 968, 55 So. 641 (1911), if he is not deprived by a higher-ranked survivor. Thus a parent could recover, but not if a spouse also survived. Parish v. Minvielle, 217 So.2d 684 (La.App.1969), cited by plaintiff as compensating mental anguish, was a wrongful death case.