JONES, Judge.
Plaintiff in each of these three consolidated actions is a subcontractor who furnished labor and materials used in the construction of a camp house in Union Parish, built for Stewart M. Scott, Jr. and Phillip A. Rosamond (hereinafter referred to as owners). These subcontractors ask for the balance due them for labor and materials provided and seek recognition of a privilege on the immovable property upon which the camp house was constructed.
In each of these proceedings the owners filed identical pleadings, consisting of an answer in which they denied owing the claim and a third party demand against the general contractors, Burt T. Carlin and Jeffy Cole, d/b/a C & C Construction Company (hereinafter referred to as contractors). The owners state they entered into a written contract[1] with the contractors which provided the contractors were to construct the camp house for a total price not to exceed $29,000. The owners assert they have paid the $29,000 and therefore owe nothing more on the contract. The owners further claim that in the event they should be held liable to plaintiffs, they are entitled to a judgment against the contractors for a like amount.
The contractors answered the third party demand, denying any liability to the owners and reconvened against the owners for additional amounts still owed to them for the construction. The contractors claimed the building contract provided the owners were to pay for the actual cost of all materials, labor, insurance and other expenses incurred in connection with the construction of the camp house, and additionally, the owners were to pay the sum of $2,600 to the contractors as a bonus for the services ren *983 dered by them. The reconventional demand of the contractors states that while the contract provides for a $29,000 ceiling price, it also provided that any changes in plans or specifications which resulted in an addition or reduction in cost would result in a corresponding change in the $29,000 ceiling price and further alleged that many costly additions were made to the plans and specifications by the owners, which had the effect of raising the ceiling price. The contractors further state they sent a final statement totaling $10,363.10 to the owners on July 24, 1974, for labor and material costs, miscellaneous expenses, and their bonus, and that the owners wrongfully refused to pay this statement because it resulted in a total cost of construction in excess of the $29,000 ceiling price provided in the contract. The July 24 statement was attached to the contractors’ reconventional demand.
The trial judge found that there had been authorized alterations additions and changes to the plans and specifications costing $7,304.61, which resulted in the camp house actually costing the sum of $36,304.61 and which adjusted the ceiling price provided in the contract accordingly. He found the owners had paid only $29,000, resulting in $7,304.61 remaining past due and unpaid. The trial court awarded each of the subcontractors a judgment against the owners for the amount of their unpaid bills and recognized their respective liens against the camp house. The trial court rejected the owners’ third party demands against the contractors. On the contractors’ reconven-tional demand, the trial court awarded them judgment against the owners for $3,769.25, the cost of authorized additions to the camp house less the subcontractors’ respective claims. We modify and affirm.
Since the owners did not file the construction contract and provide a bond, there is no question the subcontractors were entitled to a personal judgment against the owners for materials and labor supplied by them, and for recognition of their liens against the property, under the express provisions of LSA-R.S. 9:4812.
The owners complain that the trial court erred in denying their third party demand against the contractors and was further in error in giving the contractors a judgment against them on the reconventional demand.
The owners argue that, other than for services and materials worth some $900, the contractors have not proven there were any “authorized extras” which would increase the contracted price of the camp house.
The law is well settled that a contractor who adds extras to a construction with the knowledge of the owner or upon the owner’s authorization, is entitled to be paid the cost of such extras. LSA—C.C. Arts. 2763, 2764; Groner v. Cavender, 16 La.App. 565, 133 So. 825 (2d Cir. 1931); Huey Lumber and Millwork, Inc. v. Jackson, 212 So.2d 538 (La.App., 1st Cir. 1968); Gulotta v. Swinney, 143 So.2d 775 (La.App., 1st Cir. 1972).
At trial, one of the owners admitted making certain changes in the plans but indicated he thought the cost of these changes would be relatively insignificant and not greatly affect the price of the camp house. However, several of the subcontractors, the contractors, and other workers testified to the numerous and extensive changes required by Stewart Scott, one of the owners.
After reviewing the testimony and exhibits presented at trial, we hold the evidence clearly supports the trial judge’s finding that the owners’ authorized changes in the plans and specifications of the camp house increased the cost of construction. However, we cannot say his finding that “extras” added a cost of $7,304.61 to the $29,000 ceiling price was justified, since the contractors did not itemize the increased cost of the “extras” as they were added, and the evidence adduced to support the judge’s finding consisted mainly of estimates made by the contractors after construction was fully completed. Even so, the trial judge properly found that under the terms of the contract the contractors were not entitled to the $2600 bonus because the camp house was not constructed for less than the ceiling price.
*984 The owners additionally urge the contractors were precluded from offering evidence of extras to defeat the owners’ third party demand under C.C.P. Art. 1005 because this constituted an affirmative defense and was not specifically set forth. This contention is without merit. The contractors set forth the facts constituting their defense in their answer and reconven-tional demand,[2] and the attached statement. The owners make no claim they did not have fair notice of this defense, or that they were surprised or prejudiced by it. Under these circumstances the contractors’ factual allegations were adequate as an affirmative defense. Paxton v. Ballard, 289 So.2d 85 (La.1974); Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297 (La.1973); Cox v. W. M. Heroman and Company, Inc., 298 So.2d 848 (La.1974); Cambrice v. Fern Supply Company, Inc., 285 So.2d 863 (La.App., 4th Cir. 1973).
The case relied upon by the owners, McGowan-Rigsby Supply, Inc. v. Charles Carter and Company, 268 So.2d 716 (La.App., 1st Cir. 1972), is distinguishable as there the third party demand made no claim for the relief sought, nor was there a prayer for it. As noted above, the contractors here clearly advised the owners that the issue between them was the “ . many costly extras. . . . ”
The owners’ last complaint is that the trial judge erred in awarding the contractors’ judgment when the prayer in the contractors’ reconventional demand asked only for the $2600 bonus, to which they were not entitled, along with $30 expended for a fireplace jack.
In the contractors’ reconventional demand they allege that a statement asking for a final payment of $10,363.10 was presented to the owners but has remained unpaid. They attached a copy of this statement to their reconventional demand. Of this $10,363.10, a sum of $7,733.10 was listed as amounts due to various subcontractors and materialmen (including plaintiffs in these consolidated cases) for which the contractors were liable but which the construction contract obligated the owners to pay. The remainder of the amount on the statement was for the $2600 bonus, to which the contractors were not entitled, and $30 for a fireplace jack provided by the contractors. Since the contractors had primary liability for payment of these amounts, the trial judge correctly awarded the contractors those amounts previously paid by them, or still due to subcontractors not parties to this litigation. Even though the reconven-tional demand did not expressly pray for such relief, this award was proper under the provisions of LSA-C.C.P. Art. 862.[3] Such a result is consistent with the liberal interpretation to be given the Code of Civil Procedure, C.C.P. Art. 5051;[4] Budget Plan of Baton Rouge, Inc. v. Talbert, supra.
After examining the testimony and evidence introduced at trial, and the lower court’s reasons for judgment, we have found the trial judge committed an error in computation caused by his reliance on the inadequate evidence in ascertaining the additional cost required by construction of the “extras”.
The correct figure for the adjusted ceiling on the camp house is $34,846.94. This is computed by adding the amount actually *985 withdrawn from the construction account as of July 24, 1974 (i.e., $27,083.84) to the adjusted amount of the contractors’ final statement of July 24, 1974 (i.e., the total amount of the statement, $10,363.10, less the $2600 bonus to which the contractors were not entitled under the terms of the contract, leaving a difference of $7,763.10).
Our review further indicates the owners have previously paid $27,300 on the cost incurred by the contractors, reflected by the disbursements from the special construction account, along with an amount of $2,137.93 paid directly to one material supplier by the owners. Subtracting the total of these two sums from the cost of construction, there remains $5,409.01 still due. After reducing this by $3,535.36 awarded to plaintiffs-subcontractors, the contractors are entitled to a judgment against the owners for $1,873.65.
For the foregoing reasons, we reduce the trial court judgment in favor of Bert T. Carlin and Jeffy Cole and against Stewart M. Scott, Jr. and Phillip A. Rosamond to One Thousand Eight Hundred Seventy Three and 65/100 ($1,873.65) Dollars. As modified, we affirm the judgment of the trial court. Costs on appeal are assessed against Burt T. Carlin and Jeffy Cole.
Modified and affirmed.

. A copy of the contract was attached to the third party demand and reads as follows:
“This agreement made this 22nd day of March, 1974, by and between Mr. Stewart Scott hereinafter known as the owner, and Bert T. Carlin, and Jeffy Cole, D/B/A C and C Construction Co., hereinafter known as the contractor.
“Wittnesseth
“Section 1
“The contractor agrees to furnish all work, materials, services, tools, labor equipment, and supplies, necessary or required to fully perform, and complete, and will complete without any exceptions the work covered by this contract as described in the contract plans and specifications, which have been marked by both parties for identification. Contractor further agrees to furnish builders risk insurance, workmans compensation, and comprehensive liability insurance so as to protect the owner.
“Section 2
“The owner agrees to pay to the contractor a sum of money equal to the actual cost of all materials, labor, labor taxes, (state and federal) insurance, and any other expenses incurred, which are directly involved in the performance of said work. The owner further agrees to pay to the contractor the sum of $2,600.00) two thousand six hundred and no/100_Dollars, as a bonus for services rendered. Bonus is to be paid after work is complete and accepted by the owner. It is expressly understood by both parties, that there will be no monies paid by the owner to the contractor in excess of $29,000.00) twenty nine thousand and no/100.-Dollars, which shall be known as the ceiling price, however should the owner wish to make changes to the contract plans or specifications, which result in a change of actual cost, either additions, or deductions, then the ceiling price shall change accordingly.
“Section 3
“Payment to the contractor shall be made as follows: The contractor shall furnish to the owner an itemized statement of cost for all expenses incurred, on or about the 1st day of each suceeding month after construction has commenced, for approval. The owner shall then pay to the contractor the total of said statement within 5 days.”

. We need not distinguish whether the facts asserting the affirmative defense are contained in the contractors’ answer or reconventional demand since under LSA-C.C.P. Art. 1005, “ . . . [I]f a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.”

. “Art. 862. Relief granted under pleadings; sufficiency of prayer
“Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.”

. “Art. 5051 Liberal construction of articles
“The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.”