GARRISON, Judge.
This is an appeal from a district court judgment rendered in favor of a plumbing subcontractor and against the owner acting as his own general contractor. The owner withheld payment of the balance due on the construction contract, alleging that the plumbing contractor had not complied with the contract requirements in that he failed to obtain the certification of Technical Designs, Inc., he substituted fixtures other than those specified in the contract, and he performed the work in a shoddy and substandard manner. The owner additionally argued that an invoice in the amount of $1,004.52 for “overtime” work was not authorized by him and that the work was not additional “overtime” work, but rather part of the original contract.
The trial court rendered judgment in favor of J. L. Rumold Co., the plumbing contractor, in the amount of $14,000.00, the unpaid balance, plus $1,004.52 for overtime work. From that judgment, the owner appeals.
The findings of the Commissioner, which were adopted by the district court, are reproduced below:
“In May of 1973, plaintiff corporation contracted with Fejta Construction Company to perform two jobs, one contract, in the amount of $21,860.00 was for installation of 17 bathrooms and the other, in the amount of $149,072.00 was for installation of 112 bathrooms, making a total of $170,932.00 for both contracts. “In January of 1974, • the liability and payment to plaintiff by Fejta Construction Company was assumed by Rault Petroleum Corporation. Some 22 bathrooms were not trimmed out and it was agreed that a credit of $13,120.00 would be given defendant, thus reducing the total to $157,812.00.
“The parties admit that as of March 1, 1974, $123,257.00 had been paid to plaintiff by either Fejta Construction company or defendant Rault Petroleum Company, and that the balance due plaintiff, as of that time was $34,555.00. And on that date, defendant proposed that $19,555.00 would be paid plaintiff in cash upon completion of the work, with the remaining $15,000.00 to be paid by a note of defendant corporation, bearing 8V»% interest, payable on or before 180 days and personally guaranteed by defendant Joseph M. Rault, Jr.
*1239 “This proposal by defendant, although acceptable to plaintiff, was never carried out. Instead other payments were tendered to plaintiff, other charges were made and disputes arose; but as of September 16, 1974, a settlement was reached, recognizing that there existed a balance due of $28,000.00. And as security for the payment thereof, and to effect release of lien, defendant corporation submitted two letters of credit, each in the amount of $14,000.00, one due on December 16, 1974 and the other due on March 15, 1975. The letter of credit due December 16, 1974 was paid.
“The letter of credit due March 15, 1975 contained a condition that the draft for payment thereof be accompanied by written approval of the work by professional engineers of Technical Designs, Inc. An attempt was made by plaintiff to obtain this approval but Technical Designs refused to examine the work because it had neither been paid therefor nor authorized by defendants to make the examination. The letter of credit was therefore not presented to the bank when due. Payment thereof was further made impossible because nine days before its due date, defendant notified the bank not to honor the same.
“Plaintiff’s suit is not based upon the unpaid letter of credit but upon the balance due under its contract, plus $1,004.52 due for overtime work.
“The Court is of the opinion that plaintiff has sustained its burden of proof. Defendant admitted that an agreement had been reached, whereby the balance due plaintiff was $28,000.00. It admitted that two letters of credit were issued and that one was paid. Defendant has pleaded neither set-offs nor reconventional demands against the plaintiff in answer to this suit. The essence of defendant’s defense, simply stated, is that plaintiff failed to produce a certificate of satisfactory completion as required by the second letter of credit, and until such certificate is produced, plaintiff has no claim to assert. But as heretofore stated, plaintiff’s claim is for the balance due under its contract and not for the $14,000.00 due under the letter of credit.
“An attempt was made to show deficiencies in plaintiff’s work. But these deficiencies existed in December of 1973. On January 2, 1974 the work scope was reduced, the contract was revised and deficiencies pointed out in letters dated December 4, 1973 and December 11, 1973 were remedied and plaintiff received payments under the contract following said revision thereof, of $40,000.00 and $39,-113.00 and $6,000.00, with no complaints being received by plaintiff after the revision of the contract of January 2, 1974, and no punch list setting forth complaints being tendered to plaintiff after said date.
“As a matter of fact, on March 1, 1974 defendant, by letter addressed to plaintiff, thanked it for its cooperation and complimented plaintiff on the work performed to that date. At this point in time plaintiff had been paid $123,257.00. “Defendant testified that when the hotel was opened in January of 1975, Crescent City Plumbing was employed to do corrective work which plaintiff failed to properly perform. There was testimony by defendant complaining about the chill water system, but the evidence showed plaintiff did not install this. There was testimony by defendant about the blow out supply of fittings, but the evidence showed that the controls which set different pressure ratios had been tampered with, resulting in excess pressure in the lines.
“Defendant complained about looseness of the shower heads but the evidence showed that because of delays in the setting of the studs, which were not the making of plaintiff, the pipes could not be anchored.
“The evidence disclosed that Crescent Plumbing had not been employed merely to do corrective work but had been employed as a second contractor to do the same type of work plaintiff was doing. Defendant failed to establish that its complaints related to plaintiff’s work and *1240 not that of Crescent. Some plumbing was definitely not completed but this was the plumbing that had been taken out of plaintiffs contract, and for which defendant had been given a credit.
“The charge for overtime, in the sum of $1,004.52 was the result of nighttime work done on March 12,1975, to complete the setting of the fixtures that plaintiff was required to furnish. Plaintiff was unable to do this work during the daytime because the building was not in a position to accept it. Defendant was anxious to have the work done and requested of plaintiff that the work be done on overtime. Up until March 12th, when the request was made, plaintiff had not been notified that the building was ready to accept the setting of fixtures. “Defendant failed to satisfactorily show that the work performed by plaintiff was not performed in a workmanlike manner. “Plaintiff completed the contract in accordance with the terms of its agreement. Said agreement did not require that a certificate be submitted by Technical Design prior to final payment being received. It was the letter of credit that made that requirement. But the letter of credit did not alter the terms of the contract; it was given merely as additional security. And plaintiff’s suit is not directed towards the letter of credit, but is based upon the balance due it under its contract.
“The Court finds that the defendant Joseph M. Rault, Jr. is not liable in solido. His personal guarantee was intended in connection with the payment of a note to be given but which did not materialize

On appeal, the defendant specifies two errors:
1. The requirement of the approval by the engineers of Technical Designs, Inc. was a suspensive condition with which the plaintiff failed to comply thereby negating the obligation of payment.
2. The special invoice in the amount of $1,004.52 was not a charge for authorized overtime work, but rather was a double billing for work covered by the contract.
We agree with the findings below that the approval of the engineers was not a suspensive condition of the contract, but rather was a directive to the bank upon presentment of the letter of credit for payment. As the letter was never presented for payment and the defendant had instructed that no payment be made if it was presented, defendant-appellant’s argument is moot.
Accordingly, we conclude that no manifest error exists on the issue of defendant’s indebtedness and obligation to pay the remaining balance of $14,000.00.
We do, however, find manifest error on the issue of the special invoice for overtime work. Plaintiff-appellee cites the case of Smith v. Scott, 345 So.2d 981 (La.App. 2nd, 1977), and authorities cited therein for the proposition that “a contractor who adds extras to a construction with the knowledge of the owner or upon the owner’s authorization, is entitled to be paid the cost of such extras.” At 983 (emphasis added).
The record fails to support the commissioner’s finding that the defendant authorized or had knowledge of overtime work. The defendant wanted work required by the contractor to be completed:
“Q: Would you state the background if you remember?
A: We had another accident on this particular day, I think it was a water line of the 3rd floor that broke, and I called Mr. Rumold as I had before. And told him him this thing had to be repaired and further that the work on the contract had not been completed. He said that it was late in the day and I said I could not help the time of day. That we had a hotel full of guests and the work had to be done and that part of the work was hooking up and completing part of the original contract. So Mr. Rumold said he would send out the crews.
THE COURT: That is the one thousand four hundred dollars that we talked about?
THE WITNESS: Yes, sir. That was some weeks later. I did not know about *1241 overtime, pair. I thought it was work to re-
THE COURT: overtime? You did not agree to
THE WITNESS: Yes, sir.
EXAMINATION BY MR. DIETH
Q: What was your understanding of what Mr. Rumold was supposed to do at this time?
A: To finish the job that had already been part of the agreements that we talked about before and I think the repair was for a broken hot water line.”
(Testimony of J. Rault, Jr. —Tr. pp. 51-52).
It is apparent to this court that the owner neither had knowledge that the work would in question would result in additional overtime charges, nor did he authorize the work to be done as overtime work. Accordingly, we hold that finding of the commissioner to be manifestly erroneous under Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978), and reverse that part of the judgment granting to plaintiff the sum of $1,004.52.
For the reasons assigned, the judgment appealed from is amended to reduce the award from the sum of $15,004.52 to the sum of $14,000.00. As thus amended, and in all other respects, the judgment is affirmed.

AMENDED AND AFFIRMED.