255 So.2d 462 (1971)
Michael L. DUDLEY
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
Guy M. DUDLEY
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
Nos. 8469, 8470.
Court of Appeal of Louisiana, First Circuit.
November 10, 1971.
Rehearing Denied December 20, 1971.
*464 Rudolph R. Schoemann, of Schoemann, Gomez & Ducote, Perrin C. Butler, of Butler, Reeves, Renaudin & McCay, New Orleans, for appellants.
Horace Lane, Baton Rouge, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
These two consolidated suits are for damages for personal injuries arising out of an automobile accident which occurred on the Airline Highway (U. S. Highway 61) on the evening of October 9, 1968, at about 10:50 P. M. in Ascension Parish just south of the Town of Sorrento. In appellate Suit No. 8469 Michael L. Dudley sued Fred I. Griggs, individually, as owner of the automobile and as natural tutor of the minor Daniel I. Griggs, and State Farm Mutual Automobile Insurance Company, the liability insurer of the Griggs automobile. In appellate Suit No. 8470 Guy M. Dudley sued the same defendants. Allstate Insurance Company, the workmen's compensation insurer for Security Van Lines, intervened against the defendants to recover payments they had made or will have to make to Michael L. Dudley. Daniel I. Griggs became a major during the pendency of the proceedings and was added as a party defendant.
The record does not reveal what disposition was made of the exception of no cause of action filed by the defendants to the suit brought by Guy M. Dudley, but the trial court dismissed his suit at the same time it dismissed Michael L. Dudley's suit after a trial on the merits. From a dismissal of their respective suits, the plaintiffs have taken this devolutive appeal.
We reverse the trial court in the Michael L. Dudley suit and hold that Daniel I. Griggs was negligent and should be held legally responsible for the resulting damages. We affirm the trial court in the Guy M. Dudley suit because the injuries which he claims to have suffered are not compensable as a matter of law.
At the point of the accident the Airline Highway has four traffic lanes with a neutral ground separating the two northbound and the two southbound lanes. The highway was wet from an earlier rainfall. Shortly before the accident Guy M. Dudley was driving a moving van owned by Security Van Lines in the southbound lanes toward New Orleans. Michael L. Dudley, his son, and Lloyd A. Jury were passengers in the moving van. All three were employees of Security Van Lines. After noticing the headlights of an automobile stranded in the ditch next to the opposite side of the highway, Guy M. Dudley crossed over though an opening in the neutral ground to the northbound side of the road intending to offer assistance to anyone in the stranded automobile. He stopped the moving van approximately 100 feet north (the Baton Rouge side) of the stranded automobile, pulling the moving van completely off the highway onto the shoulder next to the northbound, outside lane. The moving van was two or three feet off the highway, and all of the lights on the rear of the moving van were lit and flashing. All three occupants got out of the van; Guy M. Dudley lit a flare and walked to the right rear of the trailer where his son, Michael L. Dudley, was standing.
At this time another vehicle stopped in the northbound, outside lane, about 100 feet south of the moving van and the point where the Dudleys were standing. The vehicle's lights were not lit; after the accident *465 this vehicle left the scene and has not been identified.
Meanwhile, Daniel I. Griggs, nineteen, was driving north toward Baton Rouge in a 1966 Dodge Dart owned by his father, Fred I. Griggs. Steven Griggs, Daniel's younger brother, was a passenger. Daniel I. Griggs was traveling about 65 miles per hour (within the speed limit) when he noticed the lighted moving van parked completely off the road. He did not try to slow down at this time. Moments later, his headlights picked up the unlit vehicle parked in the northbound, outside lane. The testimony concerning the distance at which Daniel I. Griggs first sighted the unlit, parked vehicle is conflicting and uncertain, though we feel certain that Griggs was only a short distance away when be became aware of its presence in the highway. Also, Daniel I. Griggs testified he was in the northbound, inside lane when he first saw the unlit, parked vehicle, but Steven Griggs testified they were traveling in the northbound, outside lane and that Daniel I. Griggs swerved to the inside lane after spotting the unlit, parked vehicle.
In any event, whether Daniel I. Griggs pulled around the unlit vehicle from the outside lane or continued on in the outside lane at or about the time he came alongside the unlit, parked car (he was in the inside lane, the parked car in the outside), he suddenly realized that something might be wrong. Fearing that the entire highway was blocked entirely because of the unlit vehicle blocking the outside lane and the lighted moving van parked on the shoulder, Daniel I. Griggs applied his brakes about the time he was parallel with the unlit vehicle in the outside lane. The Griggs automobile went out of control, skidded across the outside lane between the unlit, parked vehicle and the moving van, struck Michael L. Dudley, and dragged or pushed him into the ditch about 200 feet from the highway. The trial court found that Daniel I. Griggs' fears were unfounded since the inside, northbound lane, the lane in which he was traveling, was, in fact, not blocked.
In written Reasons for Judgment, the trial court has succinctly stated the issues upon which the case must turn as follows:
"Defendants plead the doctrine of sudden emergency and quote from the often cited case of Vowell v. Manufacturers Casualty [Ins.] Co., 229 La. 798, 86 So. 2d 909 (1956) where the Louisiana Supreme Court said:
`Our rule that a motorist travelling on the public highways after dark, or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel, even at night. But that exception to the general rule is itself subject to the exception that a motorist travelling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway.' (Emphasis added).
"The plaintiff denies that any sudden emergency existed and faults Daniel for having applied his brakes when one of the lanes of travel was not blocked and when he could have proceeded in safety. A similar argument was made and rejected in the case of Woods v. Employers Liability Assurance Corporation, 172 So.2d 100 (La.App. First Circuit, 1965) wherein Judge Landry said:
`The synthesis of these contentions is that a motorist who strikes any stationary object in the highway is negligent and responsible for resulting damages, either because he was not travelling at a reasonable rate of speed under the circumstances, or he did not *466 have his vehicle under control, or he did not timely see what he should have seen in time to avoid striking the object. The sole exception conceded is where the object completely blocks the whole highway, which exception is alleged to be inapplicable herein inasmuch as the Woods vehicle blocked only one of the westbound traffic lanes. We believe the latter contention patently without merit inasmuch as any object which tends to impede traffic or render more hazardous the flow of vehicular traffic upon a public highway must be deemed an obstruction. See e. g. LSA-R.S. 14:97."' (Reasons for Judgment, Record, pp. 39, 40)
The Court, after considering the evidence and these contentions, held:
"The proximate cause of this accident was the parked unlighted car blocking Griggs lane of travel, not Griggs' efforts to avoid an accident when confronted with a sudden emergency at night on a rainswept highway. Accordingly, plaintiff's suit against these defendants must be dismissed at his cost." (Reasons for Judgment, Record, p. 40)
Our view of the evidence accords with that of plaintiffs. There was no automobile blocking Griggs' lane of travel. Even Griggs claimed he was driving in the inside lane, and if so, he would not have had to take evasive action to avoid an obstruction. Griggs did not apply his brakes to avoid a collision with the unlit automobile. In fact, he did not apply his brakes until he was either opposite or a short distance past the unlit car. The emergency that caused him to apply his brakes and thus lose control of his vehicle was his fear that the highway ahead might be obstructed. This was purely an emergency that existed solely in Griggs' mind, and had he been keeping a proper lookout, he would have seen that the highway was not, in fact, blocked and that he could have proceeded in safety. Therefore, the emergency was of Griggs' own making and based on unfounded fears and was an emergency that existed in his mind because of the lack of use of ordinary care. There simply was nothing to prevent Griggs from seeing ahead. The evidence shows that another vehicle passed safely by the unlighted vehicle just moments before, and it is not contended that Griggs was blinded by oncoming lights. By the use of ordinary care Griggs could and should have seen that the way ahead was clear, and his failure to see what he could and should have seen presented the emergency to Griggs which caused him to lose control of his vehicle.
Lastly, we conclude that even if we were mistaken in our opinion that there was no sudden emergency and the unlit car on the highway did pose such an emergency, Griggs is not entitled to take advantage of the lower standard of conduct prescribed by that doctrine because he contributed to the emergency. Griggs was traveling approximately 65 miles per hour on a wet highway and noticed the lighted moving van off the shoulder of the road. He further noticed the unlit car parked on the highway, yet he made no attempt to slow his speed until he came alongside the unlit car. Thus, we find that Griggs, by failing to slow down on a dark, wet highway when first sighting the fully lighted moving van parked on the shoulder and by failing to slow down moments later when he first noticed the unlit, parked vehicle, not only did not exercise the ordinary standard of due care to avoid the sudden emergency, but also helped bring about the alleged sudden emergency.
LSA-R.S. 32:64(A) provides that:
"* * * No person shall drive a vehicle * * * at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing * * *."
The prerequisite for the application of the doctrine of sudden emergencythat *467 the person invoking the doctrine must not himself have contributed to the sudden emergencyis well established in this state. In Dick v. Phillips, 253 La. 366, 218 So.2d 299, 302 (1969), the Louisiana Supreme Court stated:
"* * * The rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen, it does not apply to lower the standard of care required of motorists before the emergency occurs. * * *" (Dick v. Phillips, 218 So.2d 299, 302)
See, also, Smith v. Marquette Casualty Co., 247 La. 1054, 176 So.2d 133, 137 (1965); Chouest v. Remont, 81 So.2d 568, 571 (La. App. 1st Cir. 1955); Engeron v. Le Blanc, 29 So.2d 497, 500 (La.App. 1st Cir. 1947); Prevost v. Smith, 197 So. 905, 915 (La.App. 1st Cir. 1940).
Our finding Daniel I. Griggs guilty of negligence in causing the accident and injuries to Michael Dudley necessitates our fixing the amount of damages to which he is entitled.
Michael Dudley was found by his father unconscious and submerged in a water-filled ditch approximately 180 feet from the point where he was first struck. Miraculously, his only injuries were a bruised left scalp and a laceration and fracture of the left elbow. He was hospitalized for ten days following the accident. While in the hospital, he developed other conditions attributable to the accident. These conditions were pain principally in the left ear, described as left external otitis, and a fungus infection of the left foot. The most serious injury was to his elbow which necessitated an operation to fix in place the fracture fragments. A Leinbach screw which was used to hold the fragments in place later broke and was removed in the doctor's office under local anesthesia. There is a three and a half inch permanent scar at the site of the fracture. Dr. A. D. Kirk, his treating physician, estimated he would have a 25 percent permanent partial disability to the upper extremity and resulting traumatic arthritis which will increase as he becomes older. We believe that an award of $12,500 for his personal injuries will adequately compensate plaintiff.
There is no medical or other testimony except plaintiff's own that his earning capacity has been impaired as a result of the accident. The medical estimate of the percentage of disability is meaningless without at least some competent testimony, either medical or lay, to relate the plaintiff's disability to an actual impairment of his earning capacity. Accordingly, plaintiff has failed to carry the burden of proof as to this item of damage.
The District Court after trial summarily dismissed the suit of Guy M. Dudley without assigning any reasons therefor. Guy M. Dudley's suit for damages is based on injuries which he sustained as a result of witnessing an accident which resulted in injuries to his son. His petition alleges that he "suffered great pain of mind and body, including mental aggravation and distress at witnessing the terrible accident and particularly his son, Michael L. Dudley, being struck and knocked into the Canal." (Record, p. 2) It has been the rule that a father cannot recover for mental pain and distress as a result of injuries to his child since Black v. Carrollton Railroad Company, 10 La.Ann. 33 (1855). This proposition was exhaustively discussed by Judge Landry of this Court in Holland v. St. Paul Mercury Insurance Company, 135 So.2d 145 (La.App. 1st Cir. 1961), wherein the foregoing rule was acknowledged. Accordingly, the judgment dismissing Guy M. Dudley's suit is correct.
The judgment awarded plaintiff, Michael L. Dudley, exceeds the policy limits of *468 the insurance taken out by defendant, Fred I. Griggs, on the 1966 Dodge automobile involved in the accident. Counsel for plaintiffs and intervenor argue that defendant, Fred I. Griggs, at the time of the accident owned three automobiles and had a separate automobile liability insurance policy on each, all issued by State Farm Mutual Automobile Insurance Company with limits of ten/twenty/five each; and, therefore, all three policies afforded coverage totaling $30,000. The terms and conditions of each policy are identical. It is conceded that the $10,000 policy on the Dodge qualifies for coverage, as it was used at the time of the accident and was an owned automobile under the policy and operated at the time by a resident of the insured's household. Daniel I. Griggs at the time was a minor residing with his father.
Insurance coverage under the policies written on the Buick and Volkswagen automobiles was denied on the ground that the policy provisions simply do not provide coverage. We agree.
Reference to the following policy provisions is pertinent to a resolution of this issue:
"COVERAGE ABodily Injury Liability; * * * To pay on behalf of the insured * * * damages * * * arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *
* * * * * *
"Persons Insured * * *
"(a) with respect to the owned automobile,
"(1) the named insured and any resident of the same household * * *
"(b) with respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative * * *
* * * * * *
"Definitions. Under Part I:
"`named insured' means the individual named in Item 1 of the declarations and also includes his spouse * * *
"`relative' means a relative of the named insured who is a resident of the same household;
"`owned automobile' means
"(a) a private passenger, farm or utility automobile described in this policy * *
* * * * * *
"`non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative * * *." (Exhibit I-3, Record of Joint Exhibits p. 21 [policy on Buick]; Exhibit I-4, Record of Joint Exhibits, p. 22 [policy on Volkswagen]).
With regard to whether coverage is afforded under either the Buick or Volkswagen policy, we note that defendant State Farm's liability only arises out of the ownership, maintenance or use of either the owned or non-owned automobile. Since neither of these cars was used and the Dodge was involved in the accident, then neither qualifies for coverage under this provision. (See "COVERAGE A" in Exhibit I-3, Record of Joint Exhibits, p. 21, and Exhibit I-4, Record of Joint Exhibits, p. 22.)
We next consider whether the Dodge can qualify for owned automobile coverage under these policies. Since the policy requires that the owned automobile be described in the policy, obviously the Dodge does not qualify, as it is not described in the Buick and Volkswagen policies. (See "Definitions," under Part I, "owned automobile," [a]Exhibit I-3, Record of Joint Exhibits, p. 21, and Exhibit I-4, Record of Joint Exhibits, p. 22.)
Lastly, we consider whether there is coverage under the policy provisions providing *469 for use of a non-owned automobile. A "non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative. Since the Dodge is owned by the named insured, it does not qualify for coverage under this provision. (See "Definitions," under Part I, "non-owned automobile"Exhibit I-3, Record of Joint Exhibits, p. 21, and Exhibit I-4, Record of Joint Exhibits, p. 22.)
Reliance by counsel on the "Other Insurance" clause to provide coverage is without merit.[1] We view this clause as not providing for coverage but merely providing how multiple coverages shall be prorated in the event thereof.
For the above and foregoing reasons, the judgment in appellate Suit No. 8469 dismissing plaintiff's demand is reversed and judgment is hereby rendered in favor of plaintiff, Michael L. Dudley, and against the defendant, Fred I. Griggs, Daniel I. Griggs and State Farm Mutual Automobile Insurance Company, in the sum of $12,500, together with legal interest thereon from date of judicial demand until paid, which judgment against the defendant-insurer, however, is limited with regard to the principal amount to the applicable policy limit of $10,000.
For said reasons, the judgment dismissing the demand of intervenor, Allstate Insurance Company, in appellate Suit No. 8469 is also reversed and judgment is hereby rendered in favor of Allstate Insurance Company on its petition of intervention against said defendants, Fred I. Griggs, Daniel I. Griggs and State Farm Mutual Automobile Insurance Company, for the full amount of all medical and workmen's compensation benefits paid by it to the plaintiff, Michael L. Dudley.
The judgment in appellate Suit No. 8470 dismissing plaintiff Guy M. Dudley's suit against defendants, Fred I. Griggs, Daniel I. Griggs and State Farm Mutual Automobile Insurance Company, is affirmed.
All costs of these proceedings are to be paid by defendants, Fred I. Griggs, Daniel I. Griggs and State Farm Mutual Automobile Insurance Company.
Affirmed in part, reversed in part and rendered.
NOTES
[1] The "Other Insurance" clause in all three policies provides as follows:

"* * * If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a * * * non-owned automobile shall be excess insurance over any other valid and collectible insurance."