254 So.2d 485 (1971)
Edward SPEIGHT, Individually and on Behalf of the Minor, Debbie Speight, Plaintiff-Appellee,
v.
SOUTHERN FARM BUREAU INSURANCE COMPANY and I. L. Bruce, Defendants-Appellants.
No. 3650.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1971.
*487 Jack O. Brittain, Natchitoches, for defendant-appellant.
Godfrey & O'Neal by Hodge O'Neal, III, Many, for plaintiff-appellee.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff brought this action individually and on behalf of his minor daughter, Debbie Speight, against Southern Farm Bureau Insurance Company and its insured I. L. Bruce to recover damages caused to his home when the latter's truck crashed into it, as well as for the inconvenience, worry and mental anguish which he and his daughter endured as a result of the accident. The trial court, applying the doctrine of res ipsa loquitur, rendered judgment in favor of plaintiff, awarding him the sum of $4,636.00 for the damage to his home; $100.00 for his inconvenience, worry and mental anguish, and $100.00 on behalf of Debbie Speight for her fright and nervousness. Defendants appealed that judgment to this court and plaintiff answered the appeal seeking an increase in quantum.
The evidence discloses that on April 22, 1970 defendant I. L. Bruce parked his pickup truck next to a bait shop belonging to plaintiff and situated on a hill above plaintiff's house and he and his passenger, one Benny Boughton, disembarked. Bruce could not remember whether he set the emergency brake or put the vehicle in "park" but stated, "I am pretty sure that I did not put it in park because it wouldn't have moved'cause they will not move if you put them in park". He and Boughton walked to a house which was approximately 150 yards from the truck to return some borrowed keys, and then went behind the aforementioned bait shop to place some minnows into a vat. They and the plaintiff were thus engaged, out of sight of the truck, when they heard a loud crash. They rounded the building to find that the truck, together with the boat and trailer thereto attached, had rolled down the hill and into plaintiff's house. None of the three men saw the truck until after it had struck the house, but a Mr. J. Wren testified that, although he did not see the inception of its journey, he did see the truck roll down the hill, go over some crossties which were located about halfway down the hill, knock over a butane gas tank located near the house, and crash into the house.
Res ipsa loquitur is an evidentiary rule the application of which is to be determined on the conclusion of the trial. It is appropriately applied when the accident is such as would not ordinarily occur had due care been exercised, and where the defendant can be assumed to be fully informed on the cause of the accident whereas the plaintiff cannot be expected to have any information on the subject. When it is applicable the plaintiff need not allege or prove the particular acts of omission or commission from which the accident resulted since the mere occurrence of the accident creates an inference of negligence which the defendant must then rebut and overcome. Generally the defendant must have the exclusive possession and control of the offending instrumentality, and if such is not the case the plaintiff must show freedom from fault on the part of all through whose hands it passed after leaving the defendant. Tassin v. Louisiana Power & Light Company, 250 La. 1016, 201 So.2d 275; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205.
*488 The facts of this case as set out above clearly indicate the applicability of res ipsa loquitur. The requirement of exclusive possession and control is met since there was no showing that anyone tampered with the truck after defendant Bruce left it. In this connection we note his answer to the question of whether he knew why the truck rolled down the hill. He answered, "No I sure don't. I would have thought some one would have been fooling around with itthat is what I would have thought. But being nobody there and not being nobody there, I don't know what happened." (Emphasis ours.)
Further, it is obvious that Bruce failed to overcome the inference of his negligence. He was, as shown above, unsure of whether he had put the truck in "park" or set the hand brake. Additionally he was uncertain of whether the ground was level at the spot on which he parked, being able to say only that it appeared level to him and that the truck was not moving when he left it. He conceded, however, that it could have been a slight incline. The liability of defendants is thus established and we turn now to the issue of quantum.
The portion of plaintiff's house which was actually struck was an addition to the original building, containing a porch, kitchen, dining area, and bedroom and was constructed of wood, being supported off the ground by a number of masonry blocks. The impact knocked the structure off the majority of the blocks and separated it some four inches from the main building. It produced numerous cracks and open spaces, and damaged the electrical wiring and plumbing. Additionally several windows, doors, and some built-in kitchen cabinets were thrown out of kilter, and the roof and inside walls were damaged.
The primary dispute revolves around the method to be employed in repairing the damaged portion of plaintiff's residence. Three building contractors, testifying for defendant, said that the damaged portion of the structure should be jacked up, pushed back into position, and repaired. It was their opinion that although they might not be able to put the addition in the exact position that it was in prior to the accident, the house would be just as useful to the plaintiff as before, if not more so.
Three other building contractors, who testified for plaintiff, expressed grave misgivings about the feasibility of repairing the building as recommended by defendants' witnesses. They opined that the only proper way to repair the damage was to dismantle the damaged portion and rebuild it as it was before it was struck.
The trial judge chose between these conflicting versions in favor of plaintiff's witnesses, and especially in view of the fact that two of defendants' contractors made only cursory inspections of the plaintiff's home and the third submitted an estimate which failed to include some of the repairs which would be necessary, we concur in his choice. Furthermore, he acted properly in choosing the lowest of the three estimates submitted by plaintiff's contractors. We opine, however, that he erred in denying plaintiff the cost of painting the reconstructed portion of his home.
He denied recovery for this item because the evidence is uncontradicted that the house was in need of new paint even before the accident, but the fact remains that the house did have paint on its exterior walls. As was aptly said by plaintiff's counsel, it is inconceivable that a court would order a new fender to be installed on a plaintiff's damaged automobile but not that paint should be applied to the fender. Accordingly we think this item of damages should have been allowed and we reinstate it in the amount deducted by the trial judge, i. e., $300.00.
Defendants complain of the trial court's action in awarding plaintiff damages *489 for mental anguish for himself and on behalf of his minor daughter, Debbie Speight.
In Todd v. Aetna Casualty & Surety Company, La.App., 219 So.2d 538, writ refused, 254 La. 13, 222 So.2d 66, we held that the test of whether recovery will be allowed for mental anguish, fright, etc., resulting from unintentional torts, once causation in fact has been established, is whether defendant's duty to the plaintiff includes protection against the consequences which actually occurred as determined by their foreseeability tempered by judicial policy. We are of the opinion that that test is met in the case at bar.
Plaintiff heard the sound of the truck crashing into the building and immediately rushed around the bait house and saw the damage done to his home. We have no reason to doubt his testimony that he experienced immediate shock and anxiety on viewing his damaged property and we opine that the precipitation of such emotions in the owner and resident of the building was well within the realm of foreseeability and therefore of the duty owed by defendant. Accordingly, the award of $100.00 therefore by the district court was proper and certainly not excessive.
Likewise we think the award to Debbie Speight to be within the realm of propriety. She was in her bedroom, reading, when the accident occurred, and the occupancy of a residence is certainly foreseeable. The violence of the impact caused her great and understandable fright and she rushed out of the house in terror. She testified that thereafter she was nervous and afraid to sleep in the said bedroom, and her testimony was corroborated by her parents. However, there was no medical evidence regarding the effects of her experience, and we therefore consider the award of $100.00 to be neither excessive nor inadequate.
For the above and foregoing reasons the judgment of the trial court is amended so as to increase the damages awarded for property damage from $4,636.00 to $4,936.00, and as thus amended is affirmed. Costs in this and in the district court are to be borne by defendants-appellants.
Affirmed as amended.