436 So.2d 1293 (1983)
Daryl R. BLACKWELL, Individually and as Natural Tutor of the Estate of His Minor Child, Darren Blackwell and Catherine Blackwell
v.
Frank S. OSER, M.D.
No. CA-0486.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
Rehearing Denied September 22, 1983.
Harry T. Widmann, New Orleans, for plaintiffs-appellees.
Lawrence L. McNamara, Richard B. Eason, II, New Orleans, for defendant-appellant.
Before KLEES, AUGUSTINE and LOBRANO, JJ.
AUGUSTINE, Judge.
This case of alleged medical malpractice is before us on exceptions of no cause of action. Plaintiff Daryl R. Blackwell filed this suit for damages in his individual capacity and as the natural tutor of the estate of his minor child Darren Blackwell. Mrs. Catherine W. Blackwell is also joined as plaintiff in her individual capacity. The principal defendants in this action are Frank S. Oser, Jr., M.D. and Southern Baptist Hospital of New Orleans, together with their insurers.
The basis of this suit is the plaintiffs' allegation that on February 19, 1977, Mrs. Blackwell's obstetrician, Dr. Oser, negligently delivered the child Darren Blackwell, and that as a direct result of such negligence, Darren was born with serious birth defects consisting of, among other things, permanent brain damage.
The Blackwells seek compensation for the past and future medical expenses incurred as a result of the defendant's alleged negligence. The plaintiffs also seek damages for their own mental anguish which, they assert, arises from the knowledge that their child will be mentally impaired for life. It is these latter elements of damage to which all defendants took formal exception, their opposition being that except in wrongful death cases, no person can recover damages for his own mental anguish caused by the *1294 knowledge of another person's injury, unless the defendant has breached an independent duty owed directly to the plaintiff. The trial court overruled the exceptions to the mother's claim, but sustained the exception as to the father.
By this appeal Mr. Blackwell challenges the trial court's adverse ruling. The defendants also appeal, contending that the lower court erred in recognizing a cause of action for Mrs. Blackwell's mental anguish. Because we recognize that the weight of our jurisprudence supports the trial court's decision, we affirm the judgment in all respects.

MR. BLACKWELL'S CAUSE OF ACTION
Since the decision of Black v. Carrollton Railroad Co., 10 La.Ann. 33 (1855), the well established law of this State has refused to allow recovery for mental anguish suffered as the result of injury to another person. See also, Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458 (La.1907); Kaufman v. Clark, 141 La. 316, 75 So. 65 (La. 1917).
The Black rule has been strictly followed by the cases decided in our lower circuit courts.[1] See Honeycutt v. American General Insurance Co., 126 So.2d 789 (La.App. 1st Cir.1961); Laplace v. Minks, 174 So.2d 895 (La.App. 1st Cir.1965); writs ref. 176 So.2d 452 (La.1965); Duet v. Cheramie, 176 So.2d 667 (La.App. 1st Cir.1965); Dudley v. State Farm Mutual Automobile Ins. Co., 255 So.2d 462 (La.App. 1st Cir.1971); Newman v. City of Baton Rouge, 260 So.2d 52 (La. App. 1st Cir.1972); writs ref. 262 So.2d 43 (La.1972). Parker v. St. Paul Fire and Marine Ins. Co., 335 So.2d 725 (La.1976); Warr v. Kemp, 208 So.2d 570 (La.App. 3rd Cir. 1968); Bertrand v. State Farm Fire and Casualty, Co., 333 So.2d 322 (La.App. 3rd Cir.1976); Womack v. New Orleans Public Service Inc., 5 La.App. 71 (Orl.1926); Covey v. Marquette Casualty Co., 84 So.2d 217 (La.App.Orl.1956); Robertson v. Aetna Casualty and Surety Co., 232 So.2d 829 (La. App. 4th Cir.1970); Brauninger v. Ducote, 381 So.2d 1246 (La.App. 4th Cir.1979).
Louisiana law recognizes only two exceptions to the above principle. The first arises by the express provision of Louisiana's wrongful death statute, La.Civil Code Art. 2315. The second exception concerns those instances where the claimant's mental anguish is occasioned by the defendant's breach of a primary and independent legal[2] or contractual[3] duty which is owed directly to the aggrieved plaintiff.
The latter exception thus imports a per se rule: no actor owes an independent duty to any person to avoid causing the mental anguish which often accompanies knowledge of another person's injury; if any suit to recover such damages is to be viable at all, it must be as a "parasite" to the breach of some other duty owed directly to the plaintiff. The judicial declaration that no actor owes an independent duty to refrain from harming another's psyche in the manner here alleged warrants some discussion. It has been noted that "duty" is often the mere shorthand expression of the law's ultimate decision that some wrongs will enjoy a legal remedy, while others will not, and the difference resides with the court's weighing the defendant's act in light of several factors, principally, the foreseeability of harm to the plaintiff; the "ease of association" between the defendant's conduct and the *1295 ensuing harm; the ease of administering the rule of conduct relied upon by the plaintiff to assert the defendant's liability; the likelihood of deterring future wrongs of a similar nature; the comparison of the parties' risk-bearing capacities; and the moral blame attached to the defendant by virtue of his injurious conduct. These are said to be the elements of duty. See Green, The Duty Problem in Negligence Cases, 28 Col. L.Rev. 1014, at 1034; 29 Col.L.Rev. 255 (1929); also Prosser, supra, at 327; Crowe, The Anatomy of a Tort, 22 Loy.L.Rev. 903 (1976). The weight to be given to the foregoing factors is thus critical to a court's decision as to whether one owes a duty to refrain from causing the mental anguish which can result from injury to another person. Weighing these factors, the several reasons advanced in support of the Black rule are these:
In those jurisdictions which limit or altogether prohibit recovery for mental anguish occasioned by another's injury, the most prevalent concern has long been that defendantsand the courtswill be subject to a flood of spurious and fraudulent claims if such an action were approved. Spade v. Lynn & Boston R.R. Co., 168 Mass. 285, 47 N.E. 88 (Mass.1897); Mitchell v. Rochester Ry., 151 N.Y. 107, 45 N.E. 354 (N.Y.1896); Waube v. Warrington, 216 Wis. 603, 258 N.W. 497 (Wis.1935); Victorian Ry. Comm. v. Coultas, 13 App.Cas. 222 (P.C.1888). It is also said that litigation of this sort presents an insoluble problem of proof, as to which the science of psychiatry is unable to give reliable assistance to determine either the existence of psychic harm or the defendant's role in causing it, Holland v. St. Paul Mercury Ins. Co., supra; Amaya v. Home Ice, Fuel and Supply Co., 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513 (Cal.1963); Waube, supra, and that in view of these realities, the net balance of justice would be greater if all courts denied damages for injury imputed to psychic injury alone. Smith, Relation of Emotions to Injury and Disease, 30 Va.L.Rev. 193 (1944); Amaya, supra, at 523. Similarly, it is said that mental anguish is not susceptible to accurate measurement by judge or jury, and therefore cannot serve as the basis of the action.
It is further argued that to admit a cause of action for mental anguish caused by injury to another will necessarily multiply the number of plaintiffs to whom a defendant will be liable, even if plaintiff litigants proceed in good faith. McKey v. Dow Chemical Co., Inc., 295 So.2d 516 (La.App. 1st Cir.1974). The difficulty of limiting a defendant's liability to these plaintiffs is illustrated by this inquiry:
"what if the third person was the plaintiff's beloved niece or nephew, grandparent, fiancé or lifelong friend, as dear to the family as her more immediate family?" Amaya, at 524. See also Hyatt v. Adams, 16 Mich. 180 (1867).
Moral factors also influence our courts. As stated in the principal case, Black v. Carrollton Railroad Co., supra, an important reason for denying recovery in cases such as this is that the award of mental anguish damages is essentially "vindictive" or punitive, and implies moral culpability on the part of the defendant. Where such culpability is lacking, however, as where the defendant is simply negligent rather than intentional or grossly negligent in his wrongdoing, justice requires that the defendant be required to pay only actual or compensatory damages to the primary victim. See also Rutherford v. Shreveport & H.R. Co., 41 La.Ann. 793, 6 So. 644 (La.1889).
Yet another reason limiting recovery is found in certain economic considerations, directly traceable to the latter part of the nineteenth century, which continue to inform the judgment of many courts. With the progress of the Industrial Revolution came the awareness that if nascent enterprises were to continue their growth, limitations must be set against the then-prevailing rule that a person acts at his own risk, i.e. will be held accountable for the injurious consequences of his acts without regard to "fault". See Prosser, Law of Torts, 4th Ed.1971, p. 17. Thus, to reduce industry's exposure to tort liability, courts began to formulate various doctrines which more narrowly circumscribed a defendant's duty: contributory negligence, assumption of risk, *1296 scope of employment, imputed negligence, etc. See Green, Duties, Risks, Causation Doctrines, 41 Tex.L.Rev. 42 (1962). Louisiana's rule prohibiting recovery for mental anguish caused by another's injury was conceived during that era; the language of Black v. Carrollton Railroad Co., supra, is a product of those times, and reflects an awareness that for economic reasons, enterprise liability should extend only so far:
"... we are not disposed to admit the soundness of a doctrine, which would extend vindictive damages to a case like the present. We carefully note the distinction between the immediate sufferer from a railroad accident, and a relative of the sufferer, however near may be that relation. The subject is one of great, and of increasing, importance in our country, where railroad communication is so largely developed. Railroad companies are a species of common carriers, of comparatively recent date; yet their engines have already superseded the more tardy and less powerful vehicles of the past generation, upon all the great thoroughfares of the land. It is therefore of great public concern that the measure and extent of the liabilities of railroad companies should be determined with precision.... More than almost any other kind of corporation, their corporate business subjects them to the risk of accident. It is a duty which such a company owes to the public, to make velocity of locomotion compatible with safety, so far as this can be effected by prudence and skill. It is moreover, an implied condition of their contract with each passenger, that the latter shall not be put in jeopardy of life or limb, by any fault, even the slightest, of the servants of the company. The sentiment of responsibility will be found the greatest safeguard against abuses; but at the same time that we are disposed strictly to enforce that responsibility, we deem it advisable not to extend the right to recover vindictive damages, to others than those who, in their own proper persons, are victims of the misconduct of the servants of a railroad company." Id. at 38.
In some jurisdictions, such considerations continue to the present. It is still argued that to extend liability in the manner sought by Mr. Blackwell would diminish the incentive to maintain growth in major enterprises, and that the rule proposed by this plaintiff will exact too great a price if such activities are forced into decline because of the costs of insuring them. Moreover, it is said, such an extension of liability will cause an unbearable economic impediment to many every-day activities which are not ordinarily insured. See Amaya, supra, at 525; Waube v. Warrington, 216 Wis. 603, 258 N.W. 497, 501 (Wis.1935). Of greatest concern is that, given our society's extraordinary dependence on the automobile, and the great number of personal injury suits that arise out of automobile accidents, "the liability imposed by such a doctrine would put an unreasonable burden upon users of the highway". Waube, supra, 258 N.W., at 501, relied upon in Amaya.
Considering these factors as a whole, most jurisdictions limit the classes of plaintiffs who may seek recovery for mental anguish occasioned by another's peril to those who either suffer physical impact or who are in the "zone of danger" at the time of the third person's injury.[4] As to those *1297 plaintiffs who do not fall within these classes, the law says there is no duty. In Louisiana, as noted below, there are no favored categories other than those previously mentioned, i.e. wrongful death plaintiffs and those who are owed some other independent duty.
Recently, our circuit courts of appeal have begun to question Louisiana's position with regard to this issue, and it is asked why there should never be, under any circumstances, an independent duty to refrain from injuring a person in the manner under consideration. With regard to Black's assertion that mental anguish damages are inherently "vindictive" rather than compensatory, it has since been held, contrarily, that:
"In this State, mental anguish is recognized as a distinct element of damages and not merely an incident to be taken into consideration in addition to pecuniary loss. Such damages are considered as actual or compensatory." Jiles v. Venus Community Center Benev. Mut. Aid Ass'n, 191 La. 803, 186 So. 342, 345 (La. 1939). (Emphasis added).
And as the dissent noted in Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131 (La.App. 3rd Cir.1980), our Supreme Court later stated that "damages for mental anguish or suffering are actual rather than exemplary or punitary." McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21, (La.1944) citing Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 So. 972 (La.1908). (Emphasis added).
Jiles itself concerned the recovery of mental anguish damages by the parents of a young girl, based upon the allegation that defendant's failure to provide timely medical services to the girl resulted in her suffering and eventual death. The suit was brought in contract, and not as a wrongful death action. The parents sought, and were granted, recovery for their own mental anguish in having to watch helplessly as their child died waiting for the promised aid. Given Jiles' holding, one of Black's major premises has been refuted.
As to the anticipated flood of fraudulent and spurious claims, such fears are founded upon distrust of the psychic injury itself. But nothing could be more natural or appropriate than a mother and father's genuine grief in the event of their child's injury, particularly if it is serious and permanent, as it is here. Moreover, "the possibility that fraudulent assertions may prompt recovery in isolated cases does not justify a wholesale rejection of the entire class of claims in which that potentiality arises". Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 918 (Cal.1968). To say otherwise is to admit that the impracticality of administering such a rule of law is a legitimate basis for closing the court's doors to parents whose claims are eminently just. However, given that the Courts of this state allow recovery of mental anguish damages in other contexts, the objection concerning difficulty of proof or fraud cannot be maintained. We therefore concur with the opinion that: "It is far more rational to compensate only the carefully scrutinized valid claims of tort-caused emotional distress than to deny compensation in all cases because some (or even most) claims are not valid. The difficulty of the problem does not warrant the unjustness of the present solution. Indeed, the present solution disregards the very essence of the judicial process". Brauninger v. Ducote, 381 So.2d 1246, 1249, (La.App. 4th Cir.1979), Lemmon, J., concurring.
Nor are economic arguments against allowing recovery to this plaintiff any longer compelling. Careful, deliberate expansion of responsibility in the field of products liability, for example, has exploded the myth that industry will suffer intolerably with the abandonment of contractual privity. The continuing victory of MacPherson[5] *1298 over Winterbottom[6] has proved that the prevailing values which demand accountability for injury do not unduly burden industry with unlimited liability. That there is a burden cannot be denied; but it is finite, and to the extent that it can be borne, our common sense of justice demands that it should be. In Dillon v. Legg, supra, the question presented was whether a parent who witnessed an automobile strike her young daughter should be allowed to recover mental anguish damages, even though the parent herself was outside the "zone of danger". In allowing recovery, the Court stated that, "In taking another giant step forward, in imposing product liability in tort, we were not halted by the spectre of an inability to pre-judge every future case. The setting of boundaries upon the doctrine makes the problem of fixing lines of limitation here appear, by comparison, almost miniscule". Id. 441 P.2d at 922. That comparison is even more appropriate here, for unlike Dillon, we are not now concerned with the multitude of automobile accident cases involving mental anguish to parents who were not within the "zone of danger". We deal with a narrower and more foreseeable class of plaintiffs, i.e. those parents who are aggrieved by their child's injury at the hands of a negligent physician.
Thus we arrive at the fundamental unsoundness of the doctrine announced in Black: inasmuch as the policy reasons underlying the rule are now highly questionable, at least as to some classes of plaintiffs, such an absolute bar obliterates the importance of "foreseeability of harm", and thus does violence to our long-held notion of "duty."
Since the landmark case of Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99 (1928). American law has given assent to the proposition that "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension". Id. 162 N.E. at 100. In MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (Ct.App.N.Y. 1916), a case of far wider implications than those raised here, it was said that "If he is negligent, where danger is to be foreseen, a liability will follow""and foresight of the consequences involves the creation of a duty." Id. 111 N.E. at 1053.
These formulations are particularly appropriate to negligence cases in Louisiana, where negligence (or lack of it) is viewed as arising from the relationship between the defendant's duty and the particular risks encountered by the plaintiff. Palsgraf itself was a duty-risk case: the defendant railroad was exculpated because the risk actually encountered by the plaintiff was not foreseeable, and was therefore outside the scope of the defendant's duty.
In the instructional case of Hill v. Lundin, 260 La. 542, 256 So.2d 620 (La.1972), as in Palsgraf, the decisive factor in relieving the defendant of liability was the lack of relation between the defendant's duty and the plaintiff's risk, that is, the particular harm was not foreseeable to the defendant:
"The risk encountered by the plaintiff which caused her harm was the ladder lying on the ground where it was placed by another, over which she tripped... The record is devoid of any evidence tending to establish that the defendant could have reasonably anticipated that a third person would move the ladder and put it in the position which created the risk, or that such a `naked possibility' was an unreasonable risk of harm". Id. 256 So.2d at 623.[7]
*1299 Considering the foregoing, it would seem that in an instance such as this, the law should recognize a cause of action. In the language of "duty-risk," the risk of parental anguish in the event of obstetric malpractice is to be reasonably anticipated by the defendant, and therefore, is within the scope of his duty to perform competently.
Finally, we cannot ignore the harsh inequity of a system of law which, on the one hand, allows a person to be compensated for mental anguish occasioned by damage to his property,[8] and yet on the other hand, denies the same recovery to parents who suffer the inestimable grief of knowing that their child will be forever mentally impaired because of medical malpractice. As this court once noted, "... the mother's grief over the bloodied and torn clothing of her son might be compensable, but her grief over his bloodied and torn leg is not." Cambrice v. Fern Supply Co., 285 So.2d 863 (La.App. 4th Cir.1973), at 866. See also, Stone, Louisiana Tort Doctrine: Emotional Distress Occasioned by Another's Peril, 48 Tul.L. Rev. 782 (1974).
Despite all these considerations, however, we are bound by a doctrine that has been followed in countless cases, and although Black's premises have not been even briefly discussed by our Supreme Court since 1917 (in Kaufman v. Clark, 141 La. 316, 75 So. 65), the persistent denial of writ applications signals that we are to assume the continuing validity of the rule. Brauninger v. Ducote, 381 So.2d 1246 (La.App. 4th Cir. 1981).
Accordingly, the judgment of the trial court sustaining the exception of no cause of action as to Mr. Blackwell's claim for mental anguish is affirmed.

MRS. BLACKWELL'S CAUSE OF ACTION
Whether Mrs. Blackwell may maintain her action for mental anguish as a result of injury to her child during birth depends upon whether the defendant obstetrician breached an independent duty owed directly to her. Spencer v. Terebelo, 373 So.2d 200 (La.App. 4th Cir.1979); Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961).
The defendants do not deny that Dr. Oser owed a duty to Mrs. Blackwell, his patient. But they assert that in the absence of any allegation of physical harm to her, the duty has not been breached, and therefore, that the plaintiff can have no cause of action for mental anguish.
We hold to the contrary, for unquestionably, the duty owed by an obstetrician toward his patient, a pregnant mother, includes the obligation to avoid treating her in such a manner as to cause injury to the child. For there to be a breach of this duty, it is not necessary that the mother suffer physical injury. It is sufficient that the physician's negligent treatment of the mother caused injury to the child. These facts have been adequately alleged in Mrs. Blackwell's petition, and having successfully pleaded Dr. Oser's breach of an independent duty owed directly to her, there is no impediment to Mrs. Blackwell's recovery of damages for mental anguish for the injury to her son.
Accordingly, the judgment of the trial court is affirmed and the case is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED and REMANDED.
LOBRANO, J., dissents in part.
*1300 LOBRANO, Judge, dissenting in part.
I must disagree with the majority view that Daryl R. Blackwell has no cause of action for his own mental anguish because of his child's birth defects. Although I understand but do not necessarily agree with the reasoning of Black v. Carrollton Railroad Co., 10 La.Ann. 33 (1855), and its succeeding line of cases, I am of the opinion the instant case is an exception. More specifically, the husband-father's cause of action is for breach of contract, and therefore falls within the reasoning of Holland v. St. Paul Mercury Insurance Co., 135 So.2d 145 (La.App. 1st Cir.1961).
Daryl Blackwell and his wife contracted with defendant, Dr. Oser, for his professional services in the care and delivery of their child. Certainly the husband-father has as much interest and concern as the mother in a healthy, normal birth of their infant. Together they contract for the professional expertise of a qualified obstetrician. Together they have a right to seek recovery for an alleged breach of that agreement, and certainly our jurisprudence recognizes mental anguish as an element of damages in a breach of contract case.[1] Accordingly, I would reverse that portion of the lower court ruling which denies the husband a cause of action.
NOTES
[1] The only maverick cases are Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App. Orl.1951); Jordan v. Fidelity & Cas. Co., 90 So.2d 531 (La.App. 2d Cir.1956); and Champagne v. Hearty, 78 So.2d 453 (La.App.Orl. 1954).
[2] Spencer v. Terebelo, 373 So.2d 200 (La.App. 4th Cir.1979).
[3] In Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961), the Court allowed the plaintiff parents to recover mental anguish damages arising from injuries to their child, who had swallowed pesticide left on the plaintiff's premises by the defendant exterminator. Although the Court found that the defendant had breached specific duties to the plaintiff, both in contract and in tort, some decisions have expressly limited Holland to actions in contract. See Laplace v. Minks, 174 So.2d 895 (La.App. 1st Cir.1965); Warr v. Kemp, 208 So.2d 570 (La.App. 3rd Cir. 1968); Brauninger v. Ducote, 381 So.2d 1246 (La.App. 4th Cir.1979).
[4] The exceptions which apply in many other states so as to allow recovery to a plaintiff if he himself suffered physical impact, or if he was within the "zone of danger" do not apply in Louisiana. In Smith v. Manchester Ins. & Indem. Co., 299 So.2d 517 (La.App. 4th Cir.1974), a young girl and her grandfather were both injured while riding together on a motorcycle. The girl sought recovery for her own mental anguish caused by witnessing her grandfather's injury. The Court denied recovery, citing Dudley v. State Farm Mutual Automobile Ins. Co., 255 So.2d 462 (La.App. 1st Cir.1971). There, a plaintiff father (arguably within a "zone of danger" created by defendant's negligence) was denied recovery for his own mental anguish caused by witnessing an automobile strike his son. The Dudley Court cited Black without elaboration, and did not discuss either the father's proximity to the accident or the "zone of danger" doctrine. In Sabatier v. Travelers Ins. Co., 184 So.2d 594 (La.App. 4th Cir.1966), the plaintiff and her father were in an automobile accident. The daughter's claim for mental anguish occasioned by injury to her father was rejected because she herself sustained no physical injury. In Warr v. Kemp, 208 So.2d 570 (La.App. 3rd Cir.1968), a plaintiff husband who was with his wife in the family car at the time of the accident sued for mental anguish damages which were alleged to result from his knowledge of her injuries. The Court denied recovery, citing Duet v. Cheramie, 176 So.2d 667 (La.App. 1st Cir.1965). Thus, it is clear that impact alone will not provide the basis of recovery for mental anguish occasioned by another's injury, and if Smith, supra, remains viable, neither will actual physical injury.
[5] MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (N.Y.1916).
[6] Winterbottom v. Wright, 10 M & W 109 (1842).
[7] Foreseeability of the risk was also critical to the question of duty in Todd v. Aetna Casualty & Surety Co., 219 So.2d 538 (La.App. 3rd Cir. 1969) wherein a plaintiff widow sought wrongful death recovery. Her husband's death resulted from a heart attack, allegedly caused by the excitement, mental anguish and physical exertion following his discovery that his automobile had been damaged and knocked into a ditch. The court denied recovery, holding that the defendant's duty to avoid colliding with parked automobiles did not include protection against the hazard that the owner of the vehicle may be in a house nearby and may become so distressed over the damages to his vehicle that illness or bodily harm may result. Such a consequence being "unforeseeable", defendant was found not liable, citing Palsgraf. Compare the same circuit's treatment of duty in Speight v. Southern Farm Bureau Ins. Co., 254 So.2d 485 (La.App. 3rd Cir.1971), where plaintiff homeowner was allowed to recovery mental anguish damages resulting from the defendant's negligence in driving his truck into the plaintiff's house. Distinguishing Todd, supra, the court said that duty is determined by the foreseeability of consequences, and tempered by judicial policy. Id. at 189. Recovery was granted because the particular risk was foreseeable and therefore within the scope of defendant's duty.
[8] Brown v. Crocker, 139 So.2d 779 (La.App. 2d Cir.1962); Deblieux v. P.S. & Sons Painting, Inc., 405 So.2d 600 (La.App. 3rd Cir.1981); Smith v. Town of Logansport, 395 So.2d 888 (La.App. 2d Cir.1981); Speight v. Southern Farm Bureau Ins. Co., 254 So.2d 485 (La.App. 3rd Cir.1971).
[1] In Holland v. St. Paul Mercury Insurance Co., supra, the Court cites several quasi or implied contract cases wherein recovery was permitted for mental anguish, humiliation and disappointment.