### Henry S. DIERKER, Jr. and Frances Dierker

v.

### GYPSUM TRANSPORTATION, LIMITED and the vessel, M/V GYPSUM DUCHESS.

Civ. A. No. 84–1437.

United States District Court, E.D. Louisiana.

April 15, 1985.

mately 40 feet from the place where Hunt was caught in the unloading machinery of the lower hold. Dierker sued Gypsum Transportation and the M/V Gypsum Duchess, alleging negligence and contending he sustained emotional and psychological injuries as a result of witnessing Hunt's death. Dierker's wife also sued for loss of society. It is uncontested that plaintiffs were unrelated to Hunt by blood or marriage and that Dierker suffered no physical injury aboard the vessel.

Defendants have moved for summary judgment, claiming that no cause of action has been stated under either Louisiana law or 33 U.S.C. § 905(b), the Longshoremen's and Harbor Workers' Compensation Act. In response to defendants' motion, plaintiffs contend that a bystander mental anguish claim is within the scope of § 905(b) and that recovery in the instant fact setting is possible if the "modern" rule of *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968), is employed.

■ Negligence actions under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), are clearly governed by federal law. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Hall v. Hvide Hull No. 3*, 746 F.2d 294 (5th Cir.1984). A survey of the maritime jurisprudence, however, fails to reveal a similar set of facts where damages for bystander mental anguish have been sought.

■ The legislative history to the 1972 revision of the Act provides a useful starting point. That history assumes that vessel liability to § 905(b) plaintiffs turns on "accepted principles of tort law and the ordinary process of litigation ...", that the Act shall place a § 905(b) plaintiff "in the same position he would be if he were injured in non-maritime employment ashore ...", and that the Act is not to "be applied differently in different ports depending on the law of the State in which the port may be located." H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. (1972), 3 U.S.Code Cong. & Admin.News pp. 4698, 4703–4705. These

Donald M. Pierce, Gertler & Gertler, New Orleans, La., for plaintiff.

Robert H. Murphy, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

This matter came before the court on motion of defendants, Gypsum Transportation Limited and the M/V Gypsum Duchess, for summary judgment. Having reviewed the memoranda of counsel and the law, the motion is GRANTED for the following reasons.

On August 17, 1983, Henry S. Dierker, Jr. witnessed the fatal crushing of Daniel Hunt, a fellow ship repairman, while aboard the M/V Gypsum Duchess. At the time of the incident, Dierker was standing on a catwalk above the main deck, approxi-

considerations dictate an approach to issues in § 905(b) actions that recognizes common land-based tort concepts independent of those variations among state approaches that might jeopardize uniformity of federal law. One means to an implementation of such an approach is the Restatement (Second) of Torts (1965).[1] Another means, one that merely tests the basic viability of a complaint, lies in a successive application of the different tort rules currently employed by the states. While this latter form of analysis may be of little assistance in circumstances where different rules result in conflicting outcomes, it is clear here that plaintiffs' complaint fails under the most lenient tests presently in use, as it does under the Restatement (Second).

§ 313(2)[2] of the Restatement (Second) precludes liability unless Dierker was himself subject to an "unreasonable risk of bodily harm". This would appear to be the case given Dierker's position at the time of the accident and his failure to contend that he was so endangered. Even if defendants had breached such a duty owed Dierker, there could be no recovery under the Restatement (Second) 436(3)[3] which conditions liability on the existence of a close familial relationship between the bystander and the accident victim.

Of those states permitting claims based on bystander mental anguish, most require a showing of actual (impact rule) or threatened (zone-of-danger rule) physical injury to the bystander plaintiff. See Annot., 29 A.L.R.3d 1337 (1970). Although a growing number of jurisdictions have adopted the "foreseeability" rule of *Dillon v. Legg, supra,* recovery has been uniformly denied where the plaintiff bystander and accident victim were not of the same immediate family. See Annot., 94 A.L.R.3d 486 (1979). As such, it is apparent that plaintiffs are without a cause of action in the large majority of jurisdictions and in all probability they would be unable to pursue their lawsuit in any state.

Plaintiffs' reliance on *Haught v. Maceluch,* 681 F.2d 291 (5th Cir.1982), is misplaced. The *Haught* court was, under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "in effect,

---

1. It is important to note that, in light of *Scindia Steam, supra,* caution is in order when attempting to use the Restatement (Second) within the context of a § 905(b) negligence action. See *Helaire v. Mobil Oil Co.,* 709 F.2d 1031 (5th Cir.1983). There do not, however, appear to be any maritime concerns or policies that are particularly relevant here. Bystander mental anguish claims are not discussed in the reported maritime case law or specifically governed by statute or regulation. Given these considerations and the directive that the Section employed not be subject to varying interpretations by different courts, the Restatement (Second) would seem to provide a convenient, if not ideal, source of uniform "landbased" law.

2. Section 313 states,
   (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
   (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
   (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

   (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

3. Section 436 states,
   (1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results through the internal operation of the fright or other emotional disturbance does not protect the action from liability.
   (2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.
   (3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence.

sitting as a Texas court." *Haught,* 681 F.2d at 296. More important, the bystander plaintiff and accident victim in *Haught* "were closely related—indeed, as a mother and child in childbirth their relationship was unitary." *Id.* at 299.

It is also worth noting that defendants' attempt to employ *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), is inappropriate. Although the *Gaudet* Court held that a widow, entitled under general maritime law to recover for the loss of her husband's services and society, could not recover damages for her mental anguish, it did so in the context of a wrongful death action. Such suits are derivative in nature and are "independent of any action the decedent may have had for his own personal injuries." *Id.* 414 U.S. at 578, 94 S.Ct. at 811. Even a wrongful death plaintiff may not be barred from mental anguish damages where personal participation in the events of the accident entitle her to also claim in her own right under general maritime law. *Complaint of Farrell Lines, Inc.,* 389 F.Supp. 194 (S.D.Ga.1975). Plaintiffs who have sustained psychological injuries in the course of maritime employment have been permitted compensatory damages. *Smith v. Atlas Off-Shore Boat Service, Inc.,* 653 F.2d 1057 (5th Cir.1981); *Borras v. Sea-Land Service, Inc.,* 586 F.2d 881 (1st Cir. 1978); *In re Sincere Navigation Corp.,* 329 F.Supp. 652 (E.D.La.1971) aff'd in part on other grounds sub nom., *Matter of SS Helena,* 529 F.2d 744, 754 (5th Cir.1976); *Petition of United States,* 418 F.2d 264 (1st Cir.1969). It is, therefore, unnecessary to hold that no set of facts exists which sets forth a bystander mental anguish cause of action under § 905(b).

A final and not unimportant consideration is the land-based law of the situs of the incident. *Lewis v. Timco, Inc.,* 716 F.2d 1425, 1431 (5th Cir.1983). Plaintiffs clearly have no cause of action under Louisiana law. *LeConte v. Pan American World Airways, Inc.,* 736 F.2d 1019 (5th Cir.1984); *Blackwell v. Oser,* 436 So.2d 1293 (La.Ct.App.) *writ denied,* 442 So.2d 453 (La.1983); *Jumonville v. Frank's Pe-*

*troleum, Inc.,* 422 So.2d 1261 (La.Ct.App. 1982), *writ denied,* 429 So.2d 130 (La.1983). It is, therefore, unlikely that the granting of defendant's motion will frustrate Louisiana policy.

Accordingly, the motion of defendants, Gypsum Transportation Limited and the M/V Gypsum Duchess, for summary judgment is GRANTED.